**UNITED STATES of America,**
**Plaintiff,**

v.

**Barbara Gail HEDBURG, Defendant.**

**Civ. No. 1343.**

United States District Court

D. South Dakota, S. D.

April 22, 1963.

Travis H. Lewin, Asst. U. S. Dist. Atty. for Dist. of South Dakota, Sioux Falls, S. D., for plaintiff.

Virgil E. Vail, Sioux Falls, S. D., for defendant.

MICKELSON, Chief Judge.

In this action the government is seeking $397.24 for the damage resulting to one of its automobiles from a collision between the automobile and an airplane piloted by defendant, Barbara Gail Hedburg. The accident occurred at Foss Field, Sioux Falls, South Dakota, at approximately 4:45 P.M., November 9, 1961. This court has jurisdiction under 28 U.S.C.A. § 1345

On the day in question, defendant, a student pilot, went to Foss Field for the purpose of receiving some additional flight instruction. Defendant held a student's permit. She had logged 85 hours of flight time and had soloed on numerous occasions. She testified that she had been instructed on ground safety. She had not had a formal test over Federal Aviation Agency (hereinafter FAA) rules. She testified that she thought that she had had some instruction on local rules.

Upon reaching the area where the plane she was to use was parked, defendant learned that her instructor had not yet appeared. She decided to taxi the plane from the parking area on the west edge of the loading and parking ramp to the east end of the ramp to have the gas tanks filled at Business Aviation. The plane in question, a Piper PA–18, bearing license number 3401W, had conventional landing gear; i. e., two front wheels and a tail wheel. When this type of plane is at rest or taxiing, the nose of the plane points upward at such an angle that the pilot is unable to see the ground directly in front of the plane. In order to taxi the plane safely, the pilot must either make "S" turns by causing the plane to turn from one side to the other in its forward motion, thus permitting the pilot to look forward first out of the one side window and then the other, or else have someone walk beside the plane and guide the pilot.

Defendant started the plane's motor and called to the control tower for permission to taxi to Business Aviation for fuel. The operator in the tower granted permission and defendant began to taxi away from the parking area. She taxied the plane in a northerly direction between two South Dakota Air National Guard planes, and then in a northeasterly direction (without "S"-ing) to the north edge of the ramp. When she reached this point, she turned to her right and started to taxi east toward Business Aviation; almost immediately thereafter, she struck the government's car, which was parked approximately six feet south of the north edge of the ramp. The car, a Ford Courier model, was being used by a government employee who was repairing an underground cable in the midstrip taxi way that led from the ramp to a runway. This taxi way was closed to traffic at the time. There were no warning flags or markings on the vehicle.

The ramp on which defendant was taxiing is 400 feet wide and 3275 feet long. There were a number of Air National Guard jet fighter planes parked approximately 128 feet south of the north edge of the ramp. These planes were preparing to go out on a training mission at the time and there was much activity taking place around them. The testimony revealed that all light plane pilots were warned to stay well clear of the jets in order to avoid possible damage from the exhaust blasts from the jet engines. Defendant testified that she was aware of this warning and that she made it a practice to stay well clear of the jet aircraft.

Mr. Robert Nicholson, Air Traffic Control Specialist at the FAA control tower, testified that he received defendant's request for permission to taxi to the east end of the ramp and gave her permission to do so. He looked to the west and first saw defendant's plane when it was 150

feet from the south edge of the ramp. The plane was approximately between 2,000 feet and 2,300 feet from the tower when defendant called in. Mr. Nicholson scanned the taxiing area that defendant would use but did not see the parked car. He testified that the sunlight interfered with his vision and might possibly have been the reason he did not see the car. He stated that if he had seen the car he would have warned defendant about it, since the vehicle created a hazard to taxiing aircraft. He stated that it was the usual procedure for the tower personnel to advise taxiing aircraft of other planes or vehicles in the ramp area. He did not witness the accident.

 It is the responsibility of an airplane pilot to maintain vigilance from the cockpit to avoid collision while taxiing. 14 CFR 617.25(a). Subsection (a) also provides that:

"* * * there may be restrictions upon the field of vision from the cockpit and controllers should be alert to issue information which, in their judgment, will assist the pilot in determining the proper taxi route and preventing collision with other aircraft or objects."

Subsection (e) of 14 CFR 617.25 provides that:

"The direction of taxiing aircraft and avoidance of collision within loading and parking areas is considered the primary responsibility of the aircraft operator and/or airport management, as well as the pilot."

It is not seriously disputed that the ramp on which the collision occurred is a parking and loading area. It does not seem to fall within the classification of "movement area", which is defined in 14 CFR 617.1 as "The part of an airport reserved for the taking off, landing and maneuvering of aircraft." Thus 14 CFR 617.21 (a) (ii) does not appear to be applicable, since it refers to the duties of control tower personnel with relation to aircraft operating on movement areas. By the same token, 14 CFR 617.27(a) is not applicable either, since it refers to activities on the movement area proper. As counsel for the United States has pointed out, these regulations have the force and effect of law. F. T. Dooley Lumber Co. v. United States, 8 Cir., 1933, 63 F.2d 384. When regulations are published in the Federal Register, they give legal notice of their content to all affected thereby. Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947).

The local taxiing rules which were approved by the FAA and the airport manager require a pilot to ascertain that there will be no danger of collision with any person or object in the immediate area before he taxis his aircraft. The rules also require that "All aircraft shall be taxied at a safe and reasonable speed with due regard for other aircraft, persons and property." Such local rules are designed to promote safety and it has been stated that violation thereof by one who had actual or constructive notice of them is negligence per se. Eastern Air Lines v. Union Trust Co., D.C.Cir., 1955, 95 U.S.App.D.C. 189, 221 F.2d 62.

 Even assuming that there was a duty on the part of the control tower personnel to warn defendant of any obstruction on the ramp area, the Court finds that there was no negligence on the part of the tower personnel. The tower operator testified that the sunlight interfered with his vision down the ramp. In view of the circumstances, his failure to see the car was not negligence.

 The question of the repairman's negligence in parking the car on the ramp is another matter. There was testimony that the car was in a dangerous position and created a hazard to taxiing aircraft. After viewing a map and plat of the ramp area, the Court is inclined to agree with that testimony. The position of the jet aircraft on the ramp reduced the available taxiing area to a width of less than 128 feet. Quite naturally the pilot of a light plane would bear to the north edge of the ramp when taxiing from one end of the ramp to the other, especially when the jet aircraft were

being prepared for immediate flight. The local motor vehicle regulations issued by the airport manager at Foss Field specifically require permission from the airport manager and the control tower personnel before motor vehicles may be driven on the ramps, runways, taxi strips, or the flying field proper. Mr. Orr, the airport manager, testified that he had not given the repairman written permission to take the car out on the ramp area as far as he was able to recall. It was not made clear to the Court why the car was parked on the ramp instead of on the closed mid-strip taxi way or on the grass alongside, where it would not have created a hazard to taxiing aircraft. Under all the evidence, the Court is of the opinion that the repairman was guilty of some negligence in parking the car on the ramp as he did, which negligence is imputable to the United States. The Court finds, however, that such negligence was slight.

The Court further finds that the defendant's failure to maintain a proper lookout for objects on the ramp in the path of her aircraft constituted negligence that was gross in comparison to the repairman's slight negligence. The fact that it may have been difficult for defendant to maintain a lookout because of the design of the plane did not relieve her of responsibility. She could either have had someone guide the plane from the ground or she could have made "S" turns. She did neither.

Both parties to this action have agreed that South Dakota law should be applied. Since jurisdiction is based on 28 U.S.C.A. § 1345 rather than on diversity, the Court is not bound to apply state law. However, the Court is of the opinion that this is a case in which the application of local law affords a convenient and fair mode of disposition. United States v. Standard Oil Co., 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1946); United States v. Latrobe Construction Co., 8 Cir., 1957, 246 F.2d 357; Reconstruction Finance Corp. v. United Distillers Products Corp., 2 Cir., 1956, 229 F.2d 665. Therefore, the Court looks

to the South Dakota comparative negligence statute, SDC 1960 Supp. 47.0304–1, to determine the liability, if any, of the defendant. Under the terms of the statute, a plaintiff who is guilty of contributory negligence is not barred from recovery so long as his contributory negligence is not more than slight and the defendant's negligence is gross in comparison.

Under the comparative negligence statute, the contributory negligence of the plaintiff shall be considered in the mitigation of damages in proportion to the amount of the contributory negligence attributable to him. The Court therefore reduces the amount of the plaintiff's damages to the sum of $350.00.

This memorandum decision shall constitute the Court's Findings of Fact and Conclusions of Law.

Counsel for the United States of America will prepare and submit a judgment in accord herewith.