**UNITED STATES of America, Plaintiff,**

v.

**Janet M. BURKE, Individually and in her capacity as Administratrix of the Estate of Llyle L. Burke, Deceased; Clarence Burke, Connie Burke, Beverly Morrison, Rita Schiefelbein, and First Federal Savings & Loan Association of Watertown, Defendants.**

**No. 80–1024.**

United States District Court,
D. South Dakota, N.D.

June 3, 1982.

Supplemental Opinion July 2, 1982.

John Ulrich, Asst. U.S. Atty., Sioux Falls, S.D., for plaintiff.

R. Greg Bartron, Watertown, S.D., for defendants.

## MEMORANDUM OPINION

DONALD J. PORTER, District Judge.

### CASE SUMMARY

The United States brought this action to recover judgment against the decedent and his wife, makers of a promissory note given to obtain a loan from the Farmers Home Administration, and to recover judgment against four individuals who pledged a certificate of deposit to the United States to secure payment of the note. The decedent's wife, Janet M. Burke, and the four pledgors counterclaimed against the United States, alleging infliction of emotional distress resulting from the Government's actions in pursuing the unpaid balance on the note and in attempting to recover on the pledge agreement. For the reasons which follow, judgment is entered in favor of all the defendants with regard to their liability on the promissory note and pledge. The counterclaim of Janet Burke is barred by 28 U.S.C. § 2680(h) and the counterclaims of the individual pledgors are dismissed.

### FACTUAL BACKGROUND

In the fall of 1976, Llyle L. Burke, decedent, applied for an emergency farm loan in the amount of $15,000 from the Farmers Home Administration, United States Department of Agriculture, in Watertown, South Dakota. Lacking sufficient collateral to secure the loan, Llyle convinced his father, Clarence Burke, to pledge as collateral a certificate of deposit owned jointly by Clarence, his wife Connie, and their two daughters, Beverly Morrison and Rita Schiefelbein. The FHA agreed to accept the pledge as collateral, and Clarence Burke signed a pre-pledge agreement on April 28, 1977, which provided, "I agree to pledge as collateral for Llyle L. Burke and Janet M. Burke a certificate of deposit in a minimum of $13,000 to assist them in securing $15,000

of new emergency loan credit." Connie Burke and her two daughters also agreed to pledge the C.D. as security for the FHA loan, and, along with Clarence Burke, signed a similarly worded document at the loan closing, entitled a "Pledge and Assignment of Savings Account" on behalf of "Llyle L. Burke and Janet M. Burke, husband and wife."

On July 6, 1977, the day of the loan closing, Llyle Burke signed a promissory note in the amount of $15,000 and a security agreement covering machinery and equipment. The FHA officer in charge of closing the loan allowed Llyle Burke to take the note and security agreement out of the FHA office in order to obtain the signature of his wife, Janet. Later that day, Llyle delivered the note and security agreement to the FHA bearing a signature purporting to be that of his wife, Janet M. Burke.

Llyle Burke died on April 16, 1978. Shortly thereafter the FHA contacted Janet Burke with regard to collecting the unpaid balance on the 1977 note. Janet informed the FHA that she had never co-signed any notes with Llyle. This action against Janet Burke, individually and in her capacity as administratrix of Llyle Burke's estate, and against the individual pledgors was filed in May, 1980. Following an investigation by the United States Department of Agriculture, the attorney representing all of the defendants and the Assistant United States Attorney entered into a stipulation dated November 4, 1980, that the signature appearing on the note dated July 6, 1977 was not the authentic signature of Janet M. Burke.

### DISCUSSION

### I. ENFORCEABILITY OF PLEDGE

Jurisdiction of this action is based on 28 U.S.C. § 1345, giving the district court jurisdiction in all cases where the United States is a party plaintiff. Federal courts that have considered the question have held that suits under § 1345 are not controlled by *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), requiring

adherence to appropriate state substantive law. *See, e.g., United States v. Nationwide Mutual Ins. Co.,* 499 F.2d 1355 (9th Cir. 1974); *United States v. Williams,* 441 F.2d 637 (5th Cir. 1971); and *Tri-State Ins. Co. v. United States,* 340 F.2d 542 (8th Cir. 1965). But where there is no clear federal law to apply, federal courts have referred to state law to provide the appropriate rule. *United States v. Nationwide Mutual Ins. Co., supra; United States v. Williams, supra;* and *United States v. Hedburg,* 217 F.Supp. 711 (D.S.D.1963). There is no appropriate federal law governing the instant situation. Therefore, the Court looks to the law of South Dakota to provide the substantive rules to be applied in the case at bar.

■ Although the pledge is a security device created by state law, there is no clear state law governing the enforceability of the pledge in question. As a result, the Court will apply those rules which the state's high court, in all likelihood, would also adopt. A pledge, as defined in SDCL 44–10–1, is a deposit of personal property or a contract transferring possession of such as security for an obligation. A pledge may only be given for a valid and enforceable debt. 68 Am.Jur.2d. *Secured Transactions* § 66 (1973). Therefore, if the obligation that is purported to be secured is invalid or ineffectual for any reason, effect will not be given to the transfer of property that purports to secure the obligation. *Id.*

In the instant case, Clarence Burke, along with his wife and two daughters, agreed to pledge their C.D. to secure payment of the FHA obligation incurred by Llyle L. Burke and Janet M. Burke, jointly and severally. The documents evidencing that obligation, however, were tainted by the forged signature of Janet M. Burke. The forgery not only renders the promissory note unenforceable against Janet M. Burke, but also, in this Court's view, invalidates the pledge purporting to secure the note. All of the documents relating to this particular loan transaction contain the misrepresentation that Janet M. Burke was a co-maker of the FHA promissory note. The promissory note and accompanying security agreement contain the forged signature of Janet M. Burke. The pre-pledge agreement executed by Clarence Burke indicated that the C.D. was pledged as collateral for "Llyle L. Burke and Janet M. Burke." More importantly, the document entitled, "Pledge and Assignment of Savings Account" was executed by the pledgors on behalf of the borrowers, "Llyle L. Burke and Janet M. Burke."

■ At the time of the loan transaction, the Government believed that Janet M. Burke did indeed execute the note and security agreement. The forgery was not discovered until after Llyle Burke's death. Accordingly, the misrepresentation of the authenticity of Janet Burke's signature was not fraudulent. Nevertheless, a statement intended to be truthful may be a misrepresentation because of carelessness or ignorance. *See* Restatement (2d) of Contracts § 159, Comment a (1981). Although the decedent was primarily responsible for procuring the forgery, the Government contributed substantially to the procurement by allowing the decedent to take the promissory note and security agreement out of the FHA office to obtain his wife's signature. The Government must be held accountable for any misrepresentations appearing in the loan and pledge documents which could have been avoided by prudent office procedures.

■ In an action based on misrepresentation, the misrepresentation must be material. Whether an assertion is material is determined by the rule stated in Restatement (Second) Contracts, § 162(2).[1] The misrepresentation as to Janet Burke's obligation on the FHA note was material in that it induced Clarence and Connie Burke and their two daughters to pledge their C.D. as collateral for the loan. The testi-

---

1. Restatement (Second) of Contracts, § 162(2) (1981) provides:

A misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so.

mony revealed that Janet M. Burke was known by family members to be a hard-working and financially responsible person in her own right, who could take care of any obligations incurred by her husband, Llyle. In fact, Janet M. Burke testified that shortly before the loan transaction, she had secured a contract through her private employment agency to supply drivers to the Coast-to-Coast warehouse facility in Brookings, South Dakota. The contract was expected to generate approximately $40,000 per year. The pledgors testified that they were aware that Janet had secured the contract for her employment agency when they agreed to pledge their C.D. Armed with this knowledge, the pledgors believed there was no risk involved in pledging their C.D. as additional security for the FHA loan. This Court concludes that the pledgors' assent to pledge their C.D. as collateral was induced by the misrepresentation that Janet M. Burke was a co-maker of the promissory note. Under the circumstances of the case at bar, the pledgors were entitled to rely on the material misrepresentation in the documents sued on, particularly where those documents were drafted and tendered by the Government.[2]

Although the pledgors could have made their own inquiry as to the genuineness of Janet M. Burke's signature, their fault in failing to do so does not, in this Court's opinion, amount "to a failure to act in good faith and in accordance with reasonable standards of fair dealing."[3] Accordingly, the pledge agreement is voidable by the individual pledgors.

## II. DEFENDANTS' COUNTERCLAIMS

■ Janet Burke and the individual pledgors asserted counterclaims against the United States, alleging infliction of emotional distress resulting from the Government's actions in pursuing the unpaid balance on the promissory note, and in attempting to recover on the pledge agreement.[4] The Government, however, contends that claims cognizable under the Federal Tort Claims Act (FTCA) 28 U.S.C. §§ 1346(b) and 2671 *et seq.*, are limited to those caused by "negligent or wrongful" conduct and, under South Dakota law,[5] re-

2. Restatement (Second) of Contracts, § 164(1) provides:
    (1) If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient.
    In addition, § 167 provides:
    A misrepresentation induces a party's manifestation of assent if it substantially contributes to his decision to manifest his assent.

3. Restatement (Second) of Contracts, § 172 provides:
    A recipient's fault in not knowing or discovering the facts before making the contract does not make his reliance unjustified unless it amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing.

4. The filing of an administrative claim is not a prerequisite to the Court's exercise of jurisdiction over these counterclaims. *See* 28 U.S.C. § 2675(a).

5. Under the FTCA, liability is imposed upon the Government in accordance with the law of the place where the act occurred. *Hungate v. United States,* 626 F.2d 60 (8th Cir. 1980). The South Dakota Supreme Court, in *First National Bank of Jacksonville v. Bragdon,* 84 S.D. 89,

167 N.W.2d 381 (1969), recognized the independent tort of intentional infliction of emotional distress, wherein the court stated "[t]he rule seems well established that where the act is willful or malicious, as distinguished from being merely negligent, recovery may be had for mental pain, though no physical injury results." *Id.* at 382. The essential elements of the tort are "that the act is intentional, that it is unreasonable and that the actor should recognize that it is likely to result in illness." *Id.*

Ten years later, however, the court explained its earlier statement regarding accompanying physical injury as follows:
    It is well established that damages for mental anguish or suffering cannot be sustained where there has been no accompanying physical injury ... unless there has been some conduct on the part of the defendant constituting a direct invasion of the plaintiff's rights such as that constituting slander, libel, malicious prosecution, seduction, or other like willful, wanton, or malicious misconduct.
*Chisum v. Behrens,* 283 N.W.2d 235, 240 (S.D. 1979), *quoting State Farm Mutual Auto Ins. Co. v. Village of Isle,* 265 Minn. 360, 367–68, 122 N.W.2d 36, 41 (1963).

covery for emotional distress is allowed only where it arises out of an intentional act. Therefore, the Government argues that the defendants' claims are barred by the "intentional torts" exception to the FTCA, 28 U.S.C. § 2680(h),[6] even though intentional infliction of emotional distress does not technically fall within the exception.

Recently, the Eighth Circuit Court of Appeals concluded that the tort of intentional infliction of emotional distress did not fall within the intentional torts exception of 28 U.S.C. § 2680(h). *Gross v. United States,* 508 F.Supp. 1085 (D.S.D.1981), *aff'd in part, vacated on other grounds,* 676 F.2d 295 (8th Cir. 1982). Gross, an applicant who had been denied participation in the United States Department of Agriculture's feed grain program, sought damages for the intentional infliction of emotional distress by members of a county Agriculture Stabilization and Conservation Service Committee growing out of actions taken to thwart his participation in the program. Gross alleged that the ASCS falsified statements and otherwise fraudulently attempted to deny him participation in the feed grain program when they knew or should have known that their actions would cause him emotional distress. The district court concluded that Gross had made out a claim for intentional infliction of emotional distress, and awarded him $35,000 in damages. *See Gross v. United States,* 508 F.Supp. at 1091–92. The court of appeals agreed with the district court's conclusion that the tort of intentional infliction of emotional distress did not fall within the "intentional torts" exception to the FTCA, noting that "courts should not read exceptions into the [FTCA] beyond those provided by Congress." *Gross v. United States,* 676 F.2d at 304 (8th Cir. April 23, 1982).

The ruling in *Gross,* however, must be limited to the governmental activity involved therein. The nature of the acts complained of here, however, cannot be characterized as intentional or unreasonable since there was no credible evidence that any act or omission of Government agents or the United States Attorney was intended to cause emotional distress. Nor was it unreasonable under the circumstances for the Government to bring suit against the decedent's estate and pledgors to recover on the promissory note and pledge. The Government's decision to continue to maintain this suit even after the forgery became known was also justified since the law in this state was unclear on the enforceability of the pledge.

The Court finds that the actions of the Government toward Clarence and Connie Burke and their two daughters did not constitute an intentional infliction of emotional distress. The evidence fails to support the theory advanced by the individual pledgors that the alleged wrongful acts of the Government were intentional or unreasonable.[7]

The counterclaim of Janet Burke, however, must be analyzed apart from the pledgors' counterclaim. The action of the Government in attempting to recover the unpaid balance on the promissory note from Janet Burke, when it was clear that she had no legal obligation on the note because of the forgery, is inexcusable. The Government had knowledge of the forgery within three months from the date of filing this action, yet failed to dismiss the action against Janet Burke in her individual capacity. Indeed, she was not only kept as a defendant through the trial of this action, she is still a party defendant. Although the Court condemns the Government's action in continuing to maintain this suit against

---

**6.** Section 2680(h) provides that the FTCA does not apply to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contracts rights...."

**7.** Even assuming the elements of the tort of intentional infliction of emotional distress were present, the scant evidence offered by

the pledgors falls considerably short of providing a basis for this court to find, by a preponderance, that any distress suffered was proximately caused by plaintiff, rather than other unrelated factors. The record is barren of any medical or other expert testimony and any finding for pledgors on this issue would rest on speculation alone.

Janet Burke in her individual capacity, it must conclude that such action, if tortious, falls within the intentional torts exception to the FTCA. Unlike the wrongful acts underlying the claim for intentional infliction of emotional distress in *Gross,* the wrongful acts complained of here arise out of the maintenance of this action. The allegations in the counterclaim, though characterized as the intentional infliction of emotional distress are more akin to stating a claim for malicious prosecution or abuse of process. Such acts fall within the intentional torts exception to the FTCA, 28 U.S.C. § 2680(h), thus barring Janet Burke's counterclaim.

For the foregoing reasons, the Court concludes that the United States should recover nothing on the promissory note or the pledge agreement. The Court also concludes that Janet M. Burke's counterclaim is barred by 28 U.S.C. § 2680(h), and the counterclaims of Clarence Burke, Connie Burke, Beverly Morrison and Rita Schiefelbein must be dismissed for failure to state a claim upon which relief can be granted.

### III. EQUAL ACCESS TO JUSTICE ACT

The Equal Access to Justice Act, Title II of Pub.L. No. 96–481, 94 Stat. 2325 (Oct. 21, 1980), amending 28 U.S.C. § 2412, became effective on October 1, 1981. Under the Act, a court, unless expressly prohibited by statute, may award reasonable fees and expenses of attorneys, in addition to litigation costs, to the prevailing party in any civil action brought by or against the United States or any agency and any official of the United States acting in his or her official capacity. The United States is liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

■ In the case at bar, there is no statute expressly providing for an award of attorney fees. A court, however, may assess attorney fees when the opposing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *F.D. Rich Co. v. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703

(1974). *See also Alyeska Pipeline Service Co. v. The Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); and *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). The Equal Access to Justice Act also recognizes the liability of the United States under the bad faith exception to the general American rule that attorneys' fees are not ordinarily recoverable as costs to the prevailing litigant. 28 U.S.C.A. § 2412(c)(2) provides that if the basis for an award of attorneys' fees is a finding that the United States acted in bad faith, the award must be paid by any agency found to have acted in bad faith and must be in addition to any relief provided for in the judgment.

■ For the reasons stated, *supra,* the Court must characterize the Government's action in continuing to maintain this suit against Janet Burke in her individual capacity as an act of bad faith. Accordingly, Janet Burke is entitled to an award for the reasonable fees and expenses of her attorney. The defendant, Janet Burke, shall, within thirty (30) days of entry of judgment, submit to the Court an application for fees and expenses in accordance with 28 U.S.C.A. § 2412(d)(1)(B).

■ Although the pledgors prevailed on the merits of this action, they are not entitled to recover their attorneys' fees. As discussed, *supra,* the Government was justified in bringing this suit against the pledgors to enforce the pledge agreement, even after the forgery became known. *See* 28 U.S.C.A. § 2412(d)(1)(A). Moreover, there is no statute specifically providing for an award of attorneys' fees in this instance.

This memorandum constitutes the findings of fact and conclusions of law of the Court.

### SUPPLEMENTAL OPINION

■ On June 3, 1982, this Court determined that, under the Equal Access to Justice Act, defendant Janet M. Burke was entitled to an award for the reasonable fees and expenses of her attorney in connection with the defense of this action. Subsequently, the United States, pursuant to Rule 59(e), filed a motion to alter or amend

the judgment regarding the awarding of attorneys' fees.

The United States asserts that there was no time, expense or difficulty imposed upon Janet Burke in determining the authenticity of her signature on the promissory note, nor did she incur any expense individually in defending against the truth of the signature, since the parties stipulated that the signature was false.

The United States reminds the Court that Janet M. Burke was appointed as administratrix for the estate of Llyle L. Burke. At the time of Llyle Burke's death, there remained an outstanding balance on two promissory notes due the Farmers Home Administration. The FHA filed a preferred creditor's claim with the estate of Llyle L. Burke. Upon partial satisfaction of that claim by the estate, the United States sought the balance by bringing this action. The government contends that the inheritance tax report filed on behalf of Llyle Burke by Janet Burke as administratrix did not include an automobile death indemnity and total disability insurance policy issued to Llyle and Janet Burke, with a face amount of $10,000. The United States now contends that the question before the Court was whether the insurance policy or proceeds therefrom should have been included as an estate asset and paid to the government as creditor, or whether Janet Burke would take as a beneficiary.

At the outset, the Court finds the United States' suggestion that the Court misconstrued the issue before it at trial as wholly without merit. Although the inheritance tax report and a copy of the insurance policy were received in evidence by stipulation, no testimony was heard concerning the government's right to the insurance proceeds, or contradicting Janet Burke's right to the insurance proceeds as beneficiary. Further, not only did the United States fail to present an issue regarding the insurance policy at the trial, it also failed to raise that issue in its pre-trial and post-trial briefing. To now state that such an issue was before the court is untimely and without merit.

The government states in its motion that "[i]t was, in fact, determined by the United States *prior to the commencement of this legal action* that the signature of Janet Burke was, in fact, a forgery." (Emphasis added). This action was filed on May 7, 1980. The stipulation regarding the authenticity of Janet Burke's signature, however, was not entered into until November 5, 1980. As stated by Janet Burke's counsel in his response to this motion, more than a year expired before the government was willing to stipulate that the signature of Janet M. Burke was, in fact, a forgery. Beginning as early as August, 1979, Janet Burke's counsel requested that the United States take some action to confirm the genuineness of Janet M. Burke's signature on the promissory note. Late in May, 1980, Janet Burke's counsel requested the Attorney General's office of the State of South Dakota to investigate the matter. On August 4, 1980, the United States filed a motion to dismiss the defendant's counterclaim without any indication to Janet Burke as to the government's position concerning the genuineness of the signature on the promissory note. Janet Burke's counsel received a letter from the South Dakota Attorney General's office on August 11, 1980, indicating that an individual had confessed to forging Janet M. Burke's signature on the loan document. It was not until October 30, 1980 that the [plaintiff] finally drafted a stipulation regarding the authenticity of Janet Burke's signature, and sent it to her attorney for signing.

Under these particular circumstances, the Court must reject the United States' assertion that Janet M. Burke did not incur any expense in determining the authenticity of the signature appearing on the promissory note, or in defending this action against her in her individual capacity. For the foregoing reasons, the United States' motion to alter or amend the judgment regarding the awarding of attorneys' fees is denied.

Janet Burke has submitted for the Court's approval an application for fees and expenses in the amount of $1,330.05. After carefully considering the itemized statement for fees and expenses, the Court concludes that Janet Burke's award must be reduced to $838.99. The first billing state-

ment covers the period from June 16, 1978 to August 10, 1979, wherein Janet Burke was billed a total of $491.06. The services rendered during that period, however, were not directly related to this lawsuit, but appear to be services rendered in behalf of the estate of Llyle L. Burke. Therefore, that amount will be subtracted from Janet Burke's application for attorneys fees.

In accordance with 28 U.S.C.S. § 2412(c)(2), judgment in the amount of $838.99 shall be awarded in favor of Janet M. Burke, individually, and against the plaintiff.

The foregoing memorandum, and the memorandum opinion filed June 3, 1982, constitute the Court's findings of fact and conclusions of law.