**AISHA COLON, Plaintiff**

**v.**

**GREMER DEVELOPMENT COMPANY AND GREGORY RON-CARI, Defendants**

**v.**

**CARIBBEAN CONSTRUCTION SERVICES & ASSOCIATES, INC., Third-Party Defendants**

Civil No. 499/1989

Territorial Court of the Virgin Islands

Div. of St. Croix: Kingshill

March 11, 1993

VINCENT A. FULLER, ESQ., St. Thomas, V.I., *for plaintiff*

LEE J. ROHN, ESQ., Christiansted, St. Croix, V.I., *for defendants*

WILFREDO A. GEIGEL, ESQ., St. Croix, V.I., *for third-party defendants*

PETERSEN, *Senior Sitting Judge*

## MEMORANDUM OPINION AND ORDER

This matter is before this Court on Plaintiff Aisha Colon's Motion for Relief from Judgment and Defendants Gremar Development

Corporation and Gregory Roncari's Motion to Enforce Settlement. For the reasons stated herein, both motions will be denied.

## FACTS

On January 15, 1993, Plaintiff Aisha Colon and Defendant Gremar Development Corporation attended a pre-trial conference. Settlement negotiations ensued. While the Plaintiff claims that Lee Rohn, the Defendant's attorney, referred to Gremar as "judgment proof", Attorney Rohn claims that she used the term "financial straights", in describing Gremar's inability to pay a settlement. After an hour, the parties reached a settlement. The Plaintiff agreed to dismiss all causes of action against Gremar except the claim of negligent trespass. The Plaintiff settled with the Defendant for $700,000.00. Gremar agreed to assign all of its claims against its insurer, General Accident Insurance Company. In return, the Plaintiff agreed not to execute on the settlement against the Defendants. This Court approved the settlement "pending its placement in written form".

Subsequently, Attorney Fuller asked the Defendant to submit its financial records. Stating that this "condition", was not a part of the settlement agreement, Attorney Rohn refused to submit the documents. Plaintiff then filed a Motion for Relief from Judgment. Plaintiff contends that the agreement should be voided because the Defendant misrepresented its financial condition and insurance coverage. Defendant's Motion to Enforce settlement argues that the contract should be upheld because no misrepresentations occurred.

## DISCUSSION

A settlement agreement is a contract which is binding and enforceable. Edward v. Born, Inc., 21 V.I. 385 (D.V.I. 1985). Courts favor settlements because they expedite payments and reduce the cost of litigation. James v. Fitzpatrick, 25 V.I. 124 (Terr. Ct., St. C. 1990). The law does not require that a compromise take a particular form in order to be effective. (Morrow v. American Bank and Trust Co., 397 F.Supp. 803 (M.D.La. 1975), reh'g denied 547 F.2d 309 (5th Cir. 1977). The settlement agreement can be enforced, whether or not it was made in court or reduced to writing. Edwards, supra. Here, the agreement was reached in the presence of the court. In return for the assignment of the Defendant's claim for insurance

coverage, the Plaintiff agreed not to execute on the Defendant for the $700,000.00 settlement. Attorney Rohn read the settlement into the record and the Plaintiff voluntarily accepted it. Accordingly, the settlement agreement reached at the pre-trial conference is binding and enforceable.

The Plaintiff, however, requests that the contract be set aside because the Defendant misrepresented its financial condition and insurance coverage. A contract may be voidable on the basis of misrepresentation, whether it is fraudulent or innocent. RESTATEMENT (SECOND) OF CONTRACTS § 164. For the contract to be voidable, the party must show that there was misrepresentation, that the misrepresentation was fraudulent or material, that the misrepresentation induced the recipient to enter the contract and that the recipient's reliance on the misrepresentation was reasonable. Id. The Plaintiff has the burden of proof to establish the fraud by clear and convincing evidence. Wells v. Wells, 401 S.E.2d 891 (Va. App. 1991).

The Court must first decide whether the Defendant misrepresented its insurance coverage. A misrepresentation is "an assertion that is not in accordance with the facts ". 1 RESTATEMENT (SECOND) OF CONTRACTS § 159. Plaintiff's assertion that the Defendant misrepresented its insurance coverage is incorrect. The Defendant only assigned its claims against General Accident Insurance. It did not warrant a trouble-free recovery of the insurance proceeds. A careful review of the settlement agreement read into the record by Attorney Rohn at the pre-trial conference supports the accuracy of the proposed judgment. Furthermore, any statement by Attorney Rohn as to General Accident Insurance's liability under the insurance policy is a matter of opinion that Attorney Fuller could not reasonably rely upon. See, 1 RESTATEMENT (SECOND) ON CONTRACTS § 169.

As the Defendant did not misrepresent its insurance coverage, the primary issue here is whether the Defendant misrepresented its financial condition. While the Plaintiff posits that the Defendant's attorney used the term "judgment-proof" during the negotiations to describe Gremar, Attorney Rohn states that she referred to Gremar as being in "financial straights". Unfortunately, at this Court's instruction, the court reporter's transcript does not contain the settlement negotiations. Nevertheless, the general

tenor and character of the defense attorney's statements in the presence of the Court evidenced a definitive assertion that Gremar could not pay a settlement of any size. This assertion is in discord with the alleged fact that Gremar has some assets. Consequently, a misrepresentation occurred.

The second element is whether the misrepresentation was fraudulent or material. A misrepresentation is material if it likely would have induced a reasonable person to enter into the contract and is fraudulent if the person making it knew or believed that his assertion was false at the time he made it. Redick v. Kraft. Inc., 745 F.Supp. 296 (E.D. Pa. 1990). The Court need not consider if Attorney Rohn knew or believed that Gremar actually was unable to pay a settlement. It is clear that the Plaintiff would not have agreed to accept the assignment of the insurance policy if the Defendant could pay a settlement. Consequently, the misrepresentation as to Defendant's financial condition was material to the settlement agreement.

The third element to be considered is whether the "misrepresentation induced the Plaintiff to enter into the settlement agreement. "A misrepresentation induces a party's manifestation of assent if it substantially contributes to his decision to manifest his assent". 1 RESTATEMENT (SECOND) OF CONTRACTS, § 167. Such reliance is "assumed in absence of facts to the contrary, if the misrepresentation was material but not if it was immaterial" Id. Here, the misrepresentation was material. Furthermore, there is nothing to indicate that the Plaintiff did not attach importance to the Defendant attorney's misrepresentation of its financial wherewithal. Defendant has not provided evidence of any other factors that the Plaintiff might have considered. This bare record strongly suggests that the misrepresentation was the sole factor precipitating Plaintiff's decision to accept the assignment of claim from the legal action between Gremar and General Accident Insurance in lieu of settlement monies from the Defendant.

The fourth element is whether the Plaintiff's reliance on the misrepresentation was justified. The recipient's fault makes his reliance unjustified only in extreme cases where he has failed to act in good faith and in accordance with reasonable standards of fair dealing. 1 RESTATEMENT (SECOND) OF CONTRACTS § 172. Comment. A. Peculiar qualities and characteristics of the recipient

and the circumstances of the particular case, including the fraudulent or innocent nature of the misrepresentation are considered in determining whether the recipient of a misrepresentation conformed to the standard of good faith and fair dealing. Id. Lack of reasonable care by the recipient in avoiding the mistake does not preclude him voiding the contract. Id.

In United States v. Burke, 548 F.Supp. 724 (1982), the plaintiff pledged a C.D. as collateral after the defendant's misrepresentation, that a particular person was a co-maker of a promissory note. The court found that the plaintiff's fault in failing to inquire as to the genuineness of the co-maker's signature was not a failure to act in good faith and in accordance with reasonable standards of fair dealing. Consequently, the court held that the pledge agreement was voidable. In Pacelli Bros. Transp. Inc. v. Pacelli, 456 A.2d 325 (Conn. 1983), the plaintiff entered into a settlement despite their suspicions of misdeeds by the defendants and against the advice of their accountant. The trial court, finding that the plaintiffs acted rashly, barred them from relief. The Supreme Court of Connecticut found that the plaintiff's misjudgment was not an act so extreme as to amount to a failure to act in good faith and in accordance with reasonable standards of good faith.

 Here, the Plaintiff could have conducted a title search of the Defendant's real estate prior to the pre-trial conference to better ascertain Gremar's financial condition. In a similar vein, the Plaintiff could have conditioned the settlement on the reciept and review of Gremar's financial records. While it is clear that the Plaintiff could have acted with greater care prior to and during the settlement talks, the Court finds that the Plaintiff's misjudgment was not so extreme as to amount to a failure to conform to the standard of good faith and fair dealing. Accordingly, the settlement agreement is voidable. The Defendant's Motion to Enforce Settlement is denied. As the Court has not entered a final judgment or order relative to the settlement agreement, the Court need not consider Plaintiff's Motion for Relief from Judgment at this time.

## ORDER

In Accordance with the Memorandum Opinion entered herein, it is

ORDERED that Plaintiff's Motion for Relief from Judgment and Defendants' Motion to Enforce Settlement are both Denied.