**RYAN ALLEYNE, ENID B. ALLEYNE, MICHAEL BICETTE, MARCO BLACKMAN, ANISTIA JOHN, GEORGE JOHN, SUSIE SANES and ALICIA SANES, on behalf of themselves and all others similarly situated, Plaintiffs**

**v.**

**DIAGEO USVI, INC. and CRUZAN VIRIL, LTD., Defendants**

Civil No. SX-13-CV-143

Superior Court of the Virgin Islands

Division of St. Croix

September 17, 2015

384

385

WILLIAM F. MCMURRY, ESQ., William F. McMurry & Associates, Louisville, KY, *for the Plaintiffs.*

JOEL H. HOLT, ESQ., Law Offices of Joel H. Holt, Christiansted, USVI, *for Defendant Diageo USVI, Inc.*

CHAD C. MESSIER, ESQ., Dudley, Topper and Feuerzeig, LLP, St. Thomas, USVI, *for Defendant Cruzan VIRIL, Ltd.*

MOLLOY, *Judge*

## MEMORANDUM OPINION

(September 17, 2015)

**THIS MATTER** comes before the Court on Defendants' Joint Rule 12(b)(6) Motion to Dismiss filed on July 29, 2013. Plaintiffs filed an opposition on October 2, 2013, and Defendants filed a reply on October 28, 2013. The Court held a hearing on May 27, 2015. For the reasons stated below, the Court will grant in part, and deny in part, Defendants' Motion to Dismiss.

## I. BACKGROUND

Plaintiffs are eight residents who live on St. Croix in proximity to Defendants' rum producing facilities. Defendants, Diageo USVI, Inc. ("Diageo") and Cruzan VIRIL, Ltd. ("Cruzan"), are U.S. Virgin Islands corporations that produce rum on St. Croix. Plaintiffs filed a complaint against Defendants on April 29, 2013, alleging that Defendants are liable for a blackening fungus allegedly caused by that rum production, and the resulting damages caused by this so-called "rum fungus." Specifically, Plaintiffs allege the following causes of action: (1) negligence; (2) private nuisance; (3) intentional trespass; (4) negligent trespass; and (5) right to injunctive relief.

On July 29, 2013 Defendants filed a Motion to Dismiss.[1] On May 27, 2015, the Court held a hearing on this matter. This matter having been fully briefed by both parties, and this Court having held a hearing, the Court finds that this motion is ripe for disposition.

---

[1] Also on this date, Defendants filed a Motion to Strike under Rule 12(f), which targeted the class allegations in Plaintiffs' Complaint. Additionally, on March 3, 2014, Defendants filed a Motion to Stay Discovery, pending the Court's disposition of these motions. Finally, on August 21, 2015 Defendants filed a Motion to Stay the Proceedings. As of the date of this Memorandum Opinion, that motion has not been fully briefed.

## II. LEGAL STANDARD

 Under Federal Rule of Civil Procedure 12(b)(6),[2] a party may move to dismiss a claim "for failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12. "The adequacy of a complaint is governed by the general rules of pleading set forth in Rule 8 of the Federal Rules of Civil Procedure." *Brady v. Cintron*, 55 V.I. 802, 822 (V.I. 2011). The U.S. Supreme Court has held that Rule 8 requires that a complaint set forth a plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Furthermore, the Supreme Court of the Virgin Islands has explained that "a claim requires a complaint with enough factual matter (taken as true) to suggest the required element." *Brady*, 55 V.I. at 822. The Supreme Court has further explained that "[a] motion to dismiss pursuant to Rule 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Robles v. HOVENSA, L.L.C.*, 49 V.I. 491, 494 (V.I. 2008) (citations and internal quotations omitted).

## III. DISCUSSION

Defendants make two arguments in support of their joint motion to dismiss. First, they argue that the federal Clean Air Act preempts Plaintiffs' claims. Second, Defendants argue that even if Plaintiffs' claims are not preempted by federal law, their claims fail as a matter of law under the standard set forth in Rule 12(b)(6). The Court will consider each of these arguments in turn.

### A. Preemption Analysis

 Defendants argue that the federal regulatory scheme under the Clean Air Act ("CAA"), codified at 42 U.S.C. § 7401 *et seq.*, preempts all of Plaintiffs' claims in this case. Defendants' argument is based on the supremacy of federal law to state law. The Supremacy Clause of the U.S. Constitution states that "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme

---

[2] Federal Rule of Civil Procedure 12(b)(6) is made applicable to this Court through Rule 7 of the Rules of the Superior Court.

Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. Therefore, when the federal government enacts laws within its enumerated powers, these laws are "supreme" to state laws. *Free v. Bland*, 369 U.S. 663, 666, 82 S. Ct. 1089, 8 L. Ed. 2d 180 (1962) ("[A]ny state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield.").

■ Though a U.S. Territory, the Virgin Islands is a "state" under the meaning of the CAA. 42 U.S.C. § 7602(d) ("The term 'State' means a State, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, and American Samoa and includes the Commonwealth of the Northern Mariana Islands."). Accordingly, federal law that conflicts with Virgin Islands law, or is in some other way incompatible with those laws, is preempted by those federal laws. *See, e.g.*, *Santiago v. V.I. Housing Auth.*, 57 V.I. 256 (V.I. 2012); *Benjamin v. AIG Ins. Co. of P.R.*, 56 V.I. 558 (V.I. 2012). As such, the issue before the Court is whether Plaintiffs' common law tort claims are preempted by the CAA because of the supremacy of those laws over conflicting state laws.

■ "Federal law can preempt state law in three ways: (1) express preemption, (2) field preemption, and (3) conflict preemption." *Farina v. Nokia, Inc.*, 625 F.3d 97, 115 (3d Cir. 2010). In this case, Defendants claim that the CAA preempts Plaintiffs' common law claims via conflict preemption. Conflict preemption occurs "where compliance with both laws is impossible or where state law erects an 'obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Id.* (citations omitted). "A state law also is preempted if it interferes with the methods by which the federal statute was designed to reach this goal. *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494, 107 S. Ct. 805, 93 L. Ed. 2d 883 (1987).

■ The U.S. Supreme Court has established two cornerstones for analyzing whether preemption applies to a law. First, "the purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth v. Levine*, 555 U.S. 555, 565, 129 S. Ct. 1187, 173 L. Ed. 2d 51 (2009) (internal quotes and citations omitted). Second, "[i]n all pre-emption cases, and particularly in those in which Congress has 'legislated . . . in a field which the States have traditionally occupied,' . . . we 'start with the assumption that the historic police powers of the States were not to be

superseded by the Federal Act unless that was the clear and manifest purpose of Congress.' " *Id.* (citations omitted). This assumption against preemption has been recognized by the Supreme Court of the Virgin Islands. *Cape Air Int'l v. Lindsey*, 53 V.I. 604, 616 (V.I. 2010) ("The interpretation of a preemption provision begins with 'the presumption that Congress does not intend to supplant state law.' ") (citations omitted).

The CAA contains two savings clauses. One of these savings clauses preserves enforcement of the CAA's emission standards and limits through citizen suits. 42 U.S.C. § 7604. The other savings clause, titled "Retention of State Authority," provides that:

> nothing in this Act shall preclude or deny the right of any State or political subdivision thereof to adopt or enforce (1) any standard or limitation respecting emissions of air pollutants or (2) any requirement respecting control or abatement of air pollution; except that if an emission standard or limitation is in effect under an applicable implementation plan or under section 111 or 112 [42 USCS § 7411 or 7412], such State or political subdivision may not adopt or enforce any emission standard or limitation which is less stringent than the standard or limitation under such plan or section.

42 U.S.C. § 7416. On its face, this savings clause expressly provides for the enforcement and adoption of a broad range of affirmative duties, including state "standards," "limitations," and "requirements" regarding air emissions. *Id.* This savings clause is very similar to the one found in the Clean Water Act ("CWA"). The CWA's savings clause, similarly titled "State Authority," provides the following:

> nothing in this Act [33 USCS §§ 1251 et seq.] shall (1) preclude or deny the right of any State or political subdivision thereof or interstate agency to adopt or enforce (A) any standard or limitation respecting discharges of pollutants, or (B) any requirement respecting control or abatement of pollution; except that if an effluent limitation, or other limitation, effluent standard, prohibition, pretreatment standard, or standard of performance is in effect under this Act [33 USCS §§ 1251 et seq.], such State or political subdivision or interstate agency may not adopt or enforce any effluent limitation, or other limitation, effluent standard, prohibition, pretreatment standard, or standard of performance which is less stringent than the effluent limitation, or other limi-

tation, effluent standard, prohibition, pretreatment standard, or standard of performance under this Act [33 USCS §§ 1251 et seq.]; or (2) be construed as impairing or in any manner affecting any right or jurisdiction of the States with respect to the waters (including boundary waters) of such States.

33 U.S.C. § 1370. The U.S. Supreme Court has held that this savings clause paves the way for states to adopt higher standards than those under the applicable federal standards. *Ouellette*, 479 U.S. at 499 (finding that the CWA's savings clauses "specifically allows source States to impose stricter standards."). At least one court comparing these savings clauses found that the CAA's is probably even more expansive than the CWA's because it does not make reference to state boundaries, like the CWA's savings clause does. *Bell v. Cheswick Generating Station*, 734 F.3d 188, 195 (3d Cir. 2013) ("If anything, the absence of any language regarding state boundaries in the states' rights savings clause of the Clean Air Act indicates that Congress intended to preserve more rights for the states, rather than less. In no way can this omission be read to preempt all state law tort claims.").

█ The similar savings clauses of the CAA and CWA notwithstanding, courts have disagreed about whether and to what extent the CAA preempts common law claims. The U.S. Supreme Court has ruled that the CAA preempts federal common law claims. *American Electric Power Co., Inc. v. Connecticut*, 564 U.S. 410, 131 S. Ct. 2527, 2540, 180 L. Ed. 2d 435 (2011). But this decision left open the question whether the CAA preempts state common law claims. *Id.* ("None of the parties have briefed preemption or otherwise addressed the availability of a claim under state nuisance law. We therefore leave the matter open for consideration on remand.").

Because of the lack of guidance as to whether the CAA preempts state common law claims, circuit courts have applied the U.S. Supreme Court's *Ouellette* decision construing the CWA's preemptive force to determine how far the CAA's preemption under the *American Electric Power* ruling, and under the CAA's similar savings clause, extends. In *Ouellette*, landowner plaintiffs in Vermont sued effluent emitting defendants in New York for diminishing the value of their property through the operation of defendant's paper mill. The Supreme Court found that "Vermont nuisance law is inapplicable to a New York point source," but it also found that "nothing in the [CWA] bars aggrieved individuals from bringing a

nuisance claim pursuant to the law of the *source* State." *Ouellette*, 479 U.S. at 497. Accordingly, the Court definitively found that the CWA's savings clause preserved at least some state common law causes of action. *Id.* at 492 ("Although Congress intended to dominate the field of pollution regulation, the saving clause negates the inference that Congress 'left no room' for state causes of action."). Furthermore, the Court reasoned that the CWA imposes a floor rather than a ceiling on the regulation of discharges into waterways. *Id.* at 497 ("By its terms the CWA allows States such as New York to impose higher standards on their own point sources, and in *Milwaukee II* we recognized that this authority may include the right to impose higher common-law as well as higher statutory restrictions.").

Neither the Supreme Court of the Virgin Islands nor the United States Supreme Court have ruled on the specific issue which confronts this Court: whether the CAA preempts state common law claims. To address this issue, circuit courts have applied *Ouellette*'s holding to determine whether the CWA's "sister statute", the CAA, preempts state common law claims. The result has been a circuit split. *See North Carolina ex rel. Cooper v. Tennessee Valley Auth.*, 615 F.3d 291 (4th Cir. 2010) ("*TVA*"); *Bell v. Cheswick Generating Station*, 734 F.3d 188 (3d Cir. 2013). On the one hand, the Fourth Circuit's *TVA* decision represents perhaps the strongest precedent supporting the proposition that the CAA preempts state common law claims. On the other hand, the Third Circuit's decision in *Bell* supports the argument that the CAA does not preempt state common law tort claims. While these decisions are not binding on this Court, they represent persuasive authority on this issue. Accordingly, the Court will consider each of these cases to determine whether the CAA preempts state common law claims in the Virgin Islands.

In *TVA*, the Fourth Circuit applied *Ouellette* to preempt state common law claims rooted in nuisance, which the court called "the omnibus tort of last resort." 615 F.3d at 302. By doing so, the court overturned a lower district court's injunction which had required immediate installation of emissions controls in defendant's power plants. Relying on *Ouellette*'s prohibition against affected states applying their laws to source states, the Fourth Circuit found in *TVA* that the district court had improperly applied North Carolina's home state law extraterritorially. *Id.* at 296. The court questioned "how an activity expressly permitted and extensively regulated by both federal and state government could somehow constitute

a public nuisance." *Id.* Accordingly, the court overturned the injunction, holding that allowing it to stand might encourage courts to use vague public nuisance standards to scuttle the carefully crafted regulatory framework of the CAA, and that this would lead to a "[b]alkanization of clean air regulations and a confused patchwork of standards." *Id.*

Conversely, in *Bell*, the Third Circuit found that the CAA does not preempt state common law claims. The *Bell* court, applying *Ouellette*, held that "the Supreme Court's decision in *Ouellette* controls this case, and thus, the [CAA] does not preempt state common law claims based on the law of the state where the source of the pollution is located." *Bell*, 734 F.3d at 196-197. Applying *Ouellette*, the Third Circuit found that there is "no meaningful difference between [the savings clauses in the CWA and the CAA]." *Id.* at 195. The *Bell* court considered the Fourth Circuit's reasoning in TVA and actually found their reasoning to bolster the Third Circuit's reasoning. *Id.* at 196 ("the [*TVA*] court noted that the savings clauses of the [CAA] and the [CWA] are 'similar.' It also noted that the [CWA] is 'similarly comprehensive' to the [CAA], and that '[w]hile *Ouellette* involved a nuisance suit against a source regulated under the [CWA], all parties agree its holding is equally applicable to the [CAA].' ") (citations omitted).

The *Bell* court also based its reasoning on the presumption against preemption established by the Supreme Court in its previous preemption cases. 734 F.3d at 198 ("In all pre-emption cases . . . we start with the assumption that the . . . powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.") (*quoting Medtronic, Inc., v. Lohr*, 518 U.S. 470, 485,116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996)). Applying this presumption, the court found "nothing in the [CAA] to indicate that Congress intended to preempt source state common law tort claims." *Bell*, 734 F.3d at 198. *Bell*'s conclusion squares with *Ouellette*'s finding that "application of the source State's law does not disturb the balance among federal, source-state, and affected-state interests." *Ouellette*, 479 U.S. at 498-499.

The Court agrees with the decisions in *TVA* and *Bell* that the CWA and CAA's savings clauses are similar. *TVA*, 615 F.3d at 304; *Bell*, 734 F.3d at 195. This Court also agrees with the *Bell* court that the language in the CAA is completely silent as to whether Congress intended to preempt state common law tort claims. *Bell*, 734 F.3d at 198. The Court begins from the assumption that state law is not superseded by federal law short

of some obvious conflict or Congressional intent. *Medtronic*, 518 U.S. at 485. The CAA's silence on this issue, coupled with the presumption against preemption discussed above, leads the Court to follow *Bell*'s application of *Ouellette* and to conclude that the CAA does not preempt state common law tort claims.

The Court will follow the Third Circuit's decision in *Bell* and decline to follow the Fourth Circuit's *TVA* decision for several reasons. First, the instant case is analogous to *Bell*. Both cases involve state tort claims for damages related to air emissions. Furthermore, both cases involve law suits involving only one "state." The lawsuit in *Bell* was "brought by Pennsylvania residents under Pennsylvania law against a source of pollution located in Pennsylvania." *Id.* at 197. Similarly, the case at bar was brought by Virgin Islands residents, under Virgin Islands law, against a source of pollution in the Virgin Islands. Because this case and *Bell* both involve entirely intrastate disputes, these cases avoid both the federal preemption and the federalism concerns at the heart of *Ouellette*. *Bell*, 734 F.3d at 195 n.6 ("Ultimately, the *Ouellette* Court concluded that 'the [CWA] precludes a court from applying the law of an affected State against an out-of-state source,' reasoning that if 'affected States were allowed to impose separate discharge standards on a single [out-of-state] point source, the inevitable result would be a serious interference with the achievement of the full purposes and objectives of Congress.' ") (citations omitted).

On the other hand, the decision in *TVA*, which found that at least some common law public nuisance claims are preempted by the CAA, is unpersuasive for several reasons. For starters, the *TVA* decision does not stand for the proposition that Congress has completely preempted the field of emissions regulations. *TVA*, 615 F.3d at 302 ("We need not hold flatly that Congress has entirely preempted the field of emissions regulation. We cannot anticipate every circumstance that may arise in every future nuisance action.") (citations omitted). Furthermore, the Fourth Circuit's reasoning is based on analogizing with the fact that the federal government has "completely occupied the field of nuclear safety regulations." *Id.* There are several factors that weigh against a similar finding in the air emissions arena. While the federal government may have completely occupied the field of nuclear safety regulations, it has not done so in the area of emissions regulations, as evidenced by the savings clause. Nor has the federal government completely occupied the field of

397

nuisance law — a field of law traditionally reserved to the police powers of the state. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1029, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992) (recognizing private citizens and state governments' abilities to regulate under a "State's law of private nuisance, or by the State under its complementary power to abate nuisances that affect the public generally."); *see also In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F.3d 65, 96 (2d Cir. 2013) ("Imposing state tort law liability for negligence, trespass, public nuisance, and failure-to-warn . . . falls well within the state's historic powers to protect the health, safety, and property rights of its citizens."). Furthermore, *TVA* involved applying North Carolina state public nuisance standards on facilities located across state boundaries in Alabama and Tennessee, while the case at bar features actions entirely contained in the Virgin Islands. *TVA*, 615 F.3d at 296 ("[T]he injunction improperly applied home state law extraterritorially, in direct contradiction to the Supreme Court's decision in *International Paper Co. v. Ouellette*.") (citation omitted). In fact, in *TVA*, the State of North Carolina brought a public nuisance action against a federal executive branch agency, the Tennessee Valley Authority. *Id.* The *TVA* court noted that "public nuisance is not ordinarily the means by which such major conflicts among governmental entities are resolved in modern American governance." *Id.* at 301; *see also Merrick v. Diageo Americas Supply, Inc.*, 5 F. Supp. 3d 865, 876 (W.D. Ky. 2014) (explaining that "even the dissent in *Her Majesty* [which argued against supplanting the federal permitting program under the CAA by nonprofits and governments] recognized that a cause of action for pollution might be available to *private litigants*.") (emphasis added). Conversely, in the case before the Court, private citizens brought private nuisance and other claims against two corporations.

Likewise, while the *TVA* court focused on the impropriety of applying North Carolina's public nuisance standards extraterritorially to power plants in Alabama and Tennessee, it did not compare these conflicting state laws to determine if one was more stringent or less stringent than the other. By declining to perform this analysis, the Fourth Circuit's policy argument against the balkanization of the regulatory structure is much less persuasive.

At the hearing on their motion to dismiss, Defendants argued that the *Bell* court misinterpreted *Ouellette*. Specifically, Defendants take issue with the *Bell* court's reliance on the similarities between the CAA's and

CWA's savings clauses to determine that the CAA's savings clauses preserve similar causes of actions as the CWA's does under *Ouellette*. Instead, Defendants argue the Court should look at the statutory language of the law to determine whether the CAA meant to reserve the same types of things that the Supreme Court determined were "saved" by the savings clauses in *Ouellette*. Such an analysis is unnecessary. While the Court recognizes that the CWA and CAA are different laws, regulating different vital resources, using different means to achieve their respective goals, the Court will not read different meanings into their similar savings clauses where there are no substantial differences. If there is any significant difference between the two statutes' savings clauses, it would be that the CWA's savings clause is narrower than the CAA's. *Bell*, 734 F.3d at 195. ("If anything, the absence of any language regarding state boundaries in the states' rights savings clause of the [CAA] indicates that Congress intended to preserve more rights for the states, rather than less. In no way can this omission be read to preempt all state law tort claims.").

Based on the plain meaning of the savings clauses, as well as the precedents in *Ouellette* and *Bell*, the Court finds that state common law claims are not preempted by the CAA. Highlighting this finding is the distinction between the harms claimed by Plaintiffs in this case and those addressed by the CAA. Nuisance and negligence claims seek redress for discrete harms alleged and proven in court, while the CAA's purpose is to improve "global" air quality, over time, through a federal-state partnership allowing permitted air emissions. The harms alleged by Plaintiffs in their complaint do not directly fall within the ambit of the CAA — a statute regulating air emissions — but instead are saved by the CAA's savings clause.

 Accordingly, the Court finds that the CAA does not preempt state common law claims in the Virgin Islands. This decision is in accord with the current trend of decisions deciding this issue.[3] *See Little v. Louisville Gas & Elec. Co.*, 33 F. Supp. 3d 791, 817 (W.D. Ky. 2014) (finding that "the analysis as set forth by the Third Circuit [in *Bell*], coupled with the Sixth Circuit's analysis in *Her Majesty*, captures the prevailing law for

---

[3] A Kentucky case, *Brown-Forman Corp. et al. v. Merrick et al.*, No. 2014-SC-000717 (Ky. Aug. 12, 2015), is currently on appeal. The Kentucky Supreme Court granted discretionary review of it on August 12, 2015. The trial court in that case granted defendants' motion to dismiss, finding that the CAA preempted plaintiffs' common law claims.

CAA preemption.") (citations omitted); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F.3d 65, 103 (2d Cir. 2013) (finding that the CAA did not preempt Plaintiffs' claims because Defendant had not "established Congressional objectives sufficiently at odds with state law to require that state law be set aside under the doctrine of conflict preemption."); *Her Majesty the Queen in Right of Province of Ontario v. City of Detroit*, 874 F.2d 332, 342-343 (6th Cir. 1989) ("[T]he plain language of the CAA's savings clause compels the conclusion that neither of the groups of plaintiffs are precluded by the CAA from pursuing claims under MEPA. [The CAA] clearly indicates that Congress did not wish to abolish state control."); *Merrick v. Diageo Americas Supply, Inc.*, 5 F. Supp. 3d 865, 876 (W.D. Ky. 2014) (relying on the Sixth Circuit's opinion in *Her Majesty* and the Third Circuit's *Bell* decision, and pointing out that "[i]n the years since the Supreme Court's ruling in *American Electric Power* that the CAA displaces federal common law claims, courts have increasingly interpreted the CAA's savings clauses to permit individuals to bring state common law tort claims against polluting entities."); *Technical Rubber Co. v. Buckeye Egg Farm, L.P.*, 2000 U.S. Dist. LEXIS 8602, at *16 (S.D. Ohio June 16, 2000) (relying on *Her Majesty* to hold that "the Clean Air Act does not preempt plaintiffs' state common law nuisance claims."); *Gutierrez v. Mobil Oil Corp.*, 798 F. Supp. 1280, 1285 (W.D. Tex. 1992) (holding that the CAA does not preempt plaintiffs' common law claims, and explaining that "[a]lthough this Court is concerned with the manageability and efficiency of this dual system that Congress has created, this Court must adhere to the language of the Act and the precedent established by the Supreme Court. Any change in the express wording of the statute must come from Congress and any change in the interpretation of such wording must come from a higher court. Such a conclusion is entirely consistent with the goals and purposes of the Clean Air Act, as well as the common law.").

Furthermore, the causes of action Plaintiffs bring against Defendants are the precise ones meant to have been saved by the CAA's savings clauses. The realization of the CAA's lofty goals — reduced smog, increased public welfare, less cases of asthma — potentially benefits the public at large. *Bell*, 734 F.3d at 190 ("Congress enacted the law in response to evidence of the increasing amount of air pollution created by the industrialization and urbanization of the United States and its threat to public health and welfare."). But without redress for the potential harms

400

caused by one's neighbors, the CAA strips access to justice in a way its architects could not have meant for it to do.[4] *See Gutierrez*, 798 F. Supp. at 1285 ("the Clean Air Act does not provide similar or comparable remedies to those sought by plaintiffs in common law actions for damages."). Congress has certainly not manifested an intent to foreclose the common law tort claims for which Plaintiffs seek redress in this case. As the *Bell* court noted, "[i]f Congress intended to eliminate such private causes of action, 'its failure even to hint at' this result would be 'spectacularly odd.' " *Bell*, 734 F.3d at 198 (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 491, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996)). Accordingly, the CAA does not preempt state common law tort claims.

### B. Plaintiffs' Territorial Law Claims

■ Having determined that the CAA does not preempt Plaintiffs' claims, the Court now turns to whether Plaintiffs have pleaded claims in their complaint sufficient to withstand Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). In order to test a claim's sufficiency the Court employs a three-pronged analysis. "First, 'the court must take note of the elements a plaintiff must plead to state a claim' so that the court is aware of each item the plaintiff must sufficiently plead." *Joseph v. Bureau of Corrections*, 54 V.I. 644, 649 (V.I. 2011) (citations omitted). Next, "the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. These conclusions can take the form of either legal conclusions couched as factual allegations or naked [factual] assertions devoid of further factual enhancement." *Id.* at 649-650 (internal quotation and citations omitted). Third, " 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.' If there are sufficient remaining facts that the court can draw a 'reasonable inference that the defendant is liable' based on the elements noted in the first step, then the claim is plausible." *Id.* at 650 (citations omitted).

### 1. Count I: Negligence

■ Count I of the Complaint alleges a claim for negligence. In order to establish a claim of negligence in the Virgin Islands, a plaintiff must

---

[4] This statement should not be construed to mean that the Court has determined that Defendants have caused Plaintiffs any harm in this matter.

"demonstrate that the defendant owed the plaintiff a legal duty, that the defendant breached that duty, and that the defendant's negligence caused the plaintiff's injury." *Brady v. Cintron*, 55 V.I. 802, 823 (VI. 2011).

 In their complaint, Plaintiffs plead at least two different theories of duty under which Defendants were legally obligated not to harm their property. On a negligence per se theory, Plaintiffs claim that Defendants had a duty to follow the laws of the Virgin Islands, specifically the laws against public nuisance and private nuisance. Compl. ¶ 73. Several Virgin Islands' courts have recognized a duty based on negligence per se. *See, e.g., Louis v. Caneel Bay, Inc.*, 50 V.I. 7, 15 (V.I. Super. Ct. 2008) ("While the statute does not imply a private right of action for a violation of its terms, it nevertheless includes firefighters within its ambit and therefore provides the basis for a negligence per se action since Plaintiffs are suing to recover for exposure to pollutants covered by the statute."). Plaintiffs allege that the public nuisance statute "was designed to prevent the type of harm suffered by plaintiffs and others similarly situated." Compl. ¶ 77. They also claim that Defendants had a duty to minimize and prevent the accumulation of rum fungus on Plaintiffs' real and personal property. *Id.* at ¶ 72. Finally, Plaintiffs plead duty in terms of foreseeability by alleging that Defendants knew or should have known that their actions would cause harm to the Plaintiffs. *Id.* at ¶¶ 67-60.

They further plead that Defendants breached their duties to Plaintiffs by failing to abate the nuisance and by not controlling their ethanol emissions after they were asked to do so. *Id.* at ¶¶ 74-75. Likewise, they plead that Defendants caused the emissions of ethanol which in turn caused the blackening on their property. *Id.* at ¶ 79. Finally, Plaintiffs plead that they have suffered damages in the form of reduced real estate values and reduced rental values due to the Defendants' conduct. *Id.* at ¶ 79. If these allegations prove to be true, Defendants would be liable to Plaintiffs for any damages they caused to Plaintiffs' property.

Defendants primarily attack Plaintiffs' allegations of a duty in their motion to dismiss. Specifically, Defendants use the same arguments they used to argue for preemption for why rum distillers do not have a duty not to harm their neighbors — that the emissions from their factories are permitted under the CAA. But any government-issued permits that Defendants might have to produce rum do not automatically protect them against tort claims of property damage alleged by the owners of

neighboring properties. In fact, the Government Virgin Islands Department of Planning and Natural Resources ("DPNR") has notified Diageo that its warehouses are causing "an environmental nuisance as defined in the Virgin Islands Rules and Regulation, Air Pollution Control, Title 12, Chapter 9 section 204-27."[5] Defs.' Mot. to Dismiss Ex. 10. Furthermore, based on the allegations the Court finds that the Plaintiffs have alleged a plausible claim in their Complaint to allege the four elements of negligence sufficient to survive a motion to dismiss that claim under Rule 12(b)(6) for failure to state a claim.

### 2. Count II: Private Nuisance

Count II alleges a claim against Defendants for private nuisance. Title 28, Section 331 of the Virgin Islands Code provides for private nuisance as a cause of action:

> Any person whose property is affected by a private nuisance, or whose personal enjoyment thereof is in like manner thereby affected, may maintain an action for damages therefor. If judgment is given for the plaintiff in such action, he may, in addition to the execution to enforce the same, on motion, have an order allowing a warrant to issue to the marshal to abate such nuisance. Such motion shall be made at the term at which judgment is given, and shall be allowed of course, unless it appears on the hearing that the nuisance has ceased, or that such remedy is inadequate to abate or prevent the continuance of the nuisance in which latter case the plaintiff may proceed to have the defendant enjoined.

28 V.I.C. § 331.

Virgin Islands courts have largely overlooked this statute, instead choosing to apply the Restatement in private nuisance proceedings. For instance, the District Court quoted the Restatement to explain that a

---

[5] While this matter was being adjudicated, DPNR had not initiated an enforcement action against Diageo, but instead has asked them to pay for half of the cost of sampling all residences and businesses impacted, and half of the cleaning expenses associated with those properties that test positive for the "rum fungus" *Baudoinia compniacensis*. But according to Defendants' Motion to Stay the Proceedings, filed August 21, 2015, DPNR has since issued a notice of violation to Defendants and is initiating administrative enforcement against them. *See* Defs.' Mot to Stay Proceedings at 1.

private nuisance is "a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Henry v. St. Croix Alumina, LLC*, 2009 U.S. Dist. LEXIS 80830, at *21 (D.V.I. Aug. 28, 2009) (quoting RESTATEMENTS (SECOND) OF TORTS § 821D (1979)). *See also Mahogany Run Condo. Ass'n, Inc. v. ICG Realty Mgmt. Corp.*, 40 V.I. 404, 407 (D.V.I. 1999) (quoting RESTATEMENT (SECOND) OF TORTS § 821D (1979)); *In re Tutu Wells Contamination Litig.*, 909 F. Supp. 991, 995 (D.V.I. 1995) (citing Restatement (Second) as basis of private nuisance claim); *Hodge v. Bluebeard's Castle*, 44 V.I. 242, 252 (Terr. Ct. 2002); *Boyd v. Latalladi*, 8 V.I. 173, 177 (Mun. Ct. 1971).

While the Virgin Islands Code has established private nuisance as a cause of action, it does not define what makes a private nuisance. For the purposes of statutory interpretation, the Virgin Islands Code mandates that "[w]ords and phrases shall be read with their context and shall be construed according to the common and approved usage of the English language." 1 V.I.C. § 42. Webster's defines nuisance as "[a] use of property or course of conduct that interferes with the legal rights of others by causing damage, annoyance, or inconvenience." WEBSTER'S NEW COLLEGE DICTIONARY (3rd ed. 2008). Black's Law Dictionary defines nuisance as "[a] condition, activity, or situation (such as a loud noise or foul odor) that interferes with the use or enjoyment of property; esp., a nontransitory condition or persistent activity that either injures the physical condition of adjacent land or interferes with its use . . ." BLACK'S LAW DICTIONARY 1233 (10th ed. 2014). Black's further defines a private nuisance as "[a] nuisance that affects a private right not common to the public or that causes a special injury to person or to property of a single person or a determinate number of people" or "[a] condition that interferes with a person's enjoyment of property; esp., a structure or other condition erected or put on nearby land, creating or continuing an invasion of the actor's land, creating or continuing an invasion of the actor's land and amounting to a trespass to it." *Id.* at 1235. Finally, the Restatement defines private nuisance as "a nontrespassory invasion of another's interest in the private use and enjoyment of land." RESTATEMENT (SECOND) OF TORTS § 821D.

■ A decision of our predecessor court acknowledged the private nuisance provision's existence, but still looked to the Restatement to define "private nuisance." *Boyd v. Latalladi*, 8 V.I. 173, 177 (V.I. Mun. Ct. 1971) ("A private nuisance is an unreasonable interference with another's

use and enjoyment of land. It is generally non-trespassory in nature. The mere fact that an interference in the use and enjoyment of another's land is found to exist does not mean that an action for private nuisance will lie."). Another Superior Court decision examined section 331 and found it to be "declaratory of the common law tort of private nuisance." *Bermudez v. Virgin Islands Telephone Corp.*, 54 V.I. 174, 192 (V.I. Super. Ct. 2011). A subsequent Superior Court decision employed a *Banks* analysis[6] and, relying on the definition of nuisance from the state the Virgin Islands based its nuisance statute upon, determined that "the soundest rule for the Virgin Islands is to define a private nuisance as a substantial and unreasonable nontrespassory interference with another's interest in the private use and enjoyment of land." *Cifre v. Daas Enterprises, Inc.*, 62 V.I. 338, 362 (V.I. Super. Ct. 2015) (finding that this definition is "[i]n accord with a clear majority of other jurisdictions and the approach previously utilized by other courts in the Virgin Islands.").

■■■■ This Court will adopt a definition of private nuisance which is in accord with the previous decisions of Virgin Islands courts. Specifically, the Court will define private nuisance as "a substantial, unreasonable, interference with another's interest in the private use and enjoyment of their property." This definition does not include the requirement that a private nuisance be non-trespassory because the Court finds such a requirement is unnecessary and possibly confusing. Furthermore, previous decisions explained that private nuisances are "generally non-trespassory." *Boyd*, 8 V.I. at 177. Likewise, because the Court can conceive of situations where nuisance and trespass causes of action will both lie, the Court will not require private nuisances to be nontrespassory. *See, e.g.*, *Borland v. Sanders Lead Co.*, 369 So. 2d 523, 529 (Ala. 1979) ("[T]he remedies of trespass and nuisance are not necessarily mutually exclusive.").

---

[6] The Court employs a *Banks* analysis to determine Virgin Islands common law when the Virgin Islands Supreme Court has not spoken. *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011). Under *Banks* "courts should consider 'three non-dispositive factors' to determine Virgin Islands common law: '(1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands.' " *Gov't of the Virgin Islands v. Connor*, 60 V.I. 597, 600 (V.I. 2014). A *Banks* analysis was unnecessary here because there is a statute on point, but the *Bermudez* court's use of it probably did not produce a different outcome than if its analysis had proceeded without referencing *Banks*.

■ Now that the Court has defined private nuisance, it turns to whether Plaintiffs have alleged a plausible claim for this cause of action in their complaint. In the instant case, Plaintiffs have pleaded that "Defendants have intentionally and unreasonably or unintentionally and negligently or recklessly caused an invasion of Plaintiffs' interest in the private use and enjoyment of their land . . . by the emission of ethanol from its rum production facilities." Compl. ¶ 81. Plaintiffs further allege that this invasion is unreasonable in that "[t]he gravity of the harm alleged herein outweighs the utility of the Defendants' conduct." *Id.* at ¶ 82. Plaintiffs further allege that "their [sic] exists controls which can eliminate the emission of ethanol at reasonable expense and the financial burden of compensating for the harms caused by the Defendants' emission of ethanol would not render it unfeasible to continue conducting the activity." *Id.* Additionally, Plaintiffs claim that the physical invasion of ethanol from Defendants' facilities "caus[e] unreasonable and substantial annoyance and unreasonable interference with the use and enjoyment of the property." *Id.* at ¶ 95. These allegations, buttressed by further factually specific allegations in the Complaint, support this Court's finding that Plaintiffs have sufficiently pleaded a cause of action for private nuisance to withstand Defendants' 12(b)(6) motion to dismiss.

■ The Court notes that Defendants raised a "coming to the nuisance" defense in their motion to dismiss. "Coming to the nuisance" is a defense that Defendants should not be liable to Plaintiffs who move into an area where a nuisance is already occurring. *E. St. Johns Shingle Co. v. Portland*, 195 Ore. 505, 510, 246 P.2d 554 (1952) ("The early common law rule in regard to the location of a newly arrived inhabitant was that the latter must suffer the inconvenience to health and property from industries already located in the same vicinity. The reason for this law was that it was one's own fault to move into the proximity of the offending trade or industry."). Defendants admit that this defense is not a bar to Plaintiffs' claim, at least under the Restatement. RESTATEMENT (SECOND) OF TORTS § 840D ("The fact that the plaintiff has acquired or improved his land after a nuisance interfering with it has come into existence is not in itself sufficient to bar his action, but it is a factor to be considered in determining whether the nuisance is actionable."). But Defendants argue that Plaintiffs' coming to the nuisance, coupled with the facts of this case should make Plaintiffs' claims not actionable. Defs.' Mot. to Dismiss at 24-25. This defense might apply to Cruzan, a company which has

produced rum on St. Croix for over 220 years, but not to Diageo, which only began producing rum on St. Croix recently. *Id.* at 24. Defendants point out the Plaintiffs purchased their properties after Cruzan had already been producing rum on St. Croix for many years, and that Plaintiffs have therefore "come to the nuisance." Defs.' Mot. to Dismiss, Ex. 11. But while the Court recognizes the importance of rum production in the Virgin Islands, and particularly on St. Croix, coming to the nuisance is not a reason to dismiss Plaintiffs' claims at this stage of this proceeding. There are too many factual unknowns for such a defense to be dispositive of Plaintiffs' claims at this stage. It is unknown at this time, for instance, how many barrels of rum are being produced now versus when Plaintiffs began to occupy their properties. More importantly, Defendants' "coming to the nuisance" defense is not apparent on the face of the complaint. *Ball v. Famiglio*, 726 F.3d 448, 459 n.16 (3d Cir. 2013) ("affirmative defense must be apparent on the face of the complaint to be subject to a Rule 12(b)(6) motion to dismiss.") (citing *Rycoline Prods., Inc. v. C&W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997)).

### 3. Count III: Intentional Trespass

Count III alleges that Defendants are liable to Plaintiffs for intentional trespass. For common law claims not supplanted by the Virgin Islands Code, the Court looks to the Supreme Court to see if it has spoken decisively to what elements make up a given common law cause of action. If the Supreme Court has not addressed a cause of action, the Court performs a *Banks* analysis to determine the soundest rule for the Virgin Islands. *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011); *Gov't of the Virgin Islands v. Connor*, 60 V.I. 597, 603 (V.I. 2014) ("[T]he Superior Court, when considering a question not foreclosed by prior precedent from this Court, must perform a three-part analysis as set forth in *Banks*."). Because intentional trespass is not defined in the Virgin Islands Code, and the Virgin Islands Supreme Court has not handed down any post-*Banks* decisions regarding intentional trespass, the Court will perform a *Banks* analysis to determine the common law of the Virgin Islands regarding this cause of action. *Better Building Maintenance of the Virgin Islands, Inc. v. Lee*, 60 V.I. 740, 757 (V.I. 2014) ("[T]he Superior Court has the authority — subject to [the Supreme] Court's review — to shape the common law of the Territory."). To perform a *Banks* analysis, the Court first "examin[es] which common law rule Virgin Islands courts

have applied in the past; next identifi[es] the rule adopted by a majority of courts of other jurisdictions; and then finally — but most importantly — determin[es] which common law rule is soundest for the Virgin Islands." *Id.*

In a pre-*Banks* decision, the Supreme Court of the Virgin Islands looked to the RESTATEMENTS (SECOND) OF TORTS Section 158 to define intentional trespass. *Hodge v. McGowan,* 50 V.I. 296, 306 (V.I. 2008) ("The Restatement (Second) of Torts states that a plaintiff claiming trespass has the burden of proving that the defendant 'intentionally (a) enter[ed] land in the possession of the other, or cause[d] a thing or a third person to do so, or (b) remain[ed] on the land, or (c) fail[ed] to remove from the land a thing which he [was under a duty to remove.' RESTATEMENT (SECOND) OF TORTS § 158 (1965)."). A District Court decision similarly relied on this section to define trespass in a pre-*Banks* decision. *See Harthman v. Texaco, Inc. (In re Tutu Wells Contamination Litig.),* 909 F. Supp. 991, 995 (D.V.I. 1995).

More recently the Superior Court performed a *Banks* analysis and determined that the soundest rule for the Virgin Islands is to "define trespass as 'the unauthorized entry upon the land of another by a person or an object as a result of a person's actions.' " *Bell et al. v. Radcliffe et al.,* ST-CV-392 Mem. Op. April 30, 2014 ("*Radcliffe*"). To make this determination, the *Radcliffe* court first looked to the RESTATEMENT (SECOND) OF TORTS Section 158 and noted that several jurisdictions' highest courts have adopted the definition of trespass from the Restatement.[7] Next, the Court noted that some other courts had adopted

---

[7] *Callaway v. Whittenton,* 892 So. 2d 852, 857 (Ala. 2003); *Phoenix Control Sys. v. Insurance Co. of N. Am.,* 165 Ariz. 31, 36, 796 P.2d 463 (1990) (explaining that "the tort of trespass . . . requires an intentional entry onto the land of another."); *City of Bristol v. Tilcon Minerals, Inc.,* 284 Conn. 55, 88, 931 A.2d 237 (2007) ("Regarding the element of intent, '[i]t is enough that an act is done with knowledge that it will, to a substantial certainty result in the entry of the foreign matter.' "); *Guam Sanko Transp., Inc. v. Pac. Modair Corp.,* 2012 Guam 2, ¶ 8 (2012); *Nichols v. City of Evansdale,* 687 N.W.2d 562, 572 (Iowa 2004); *Medeika v. Watts,* 2008 ME 163, ¶ 5, 957 A.2d 980 (2008); *Johnson v. Paynesville Farmers Union Coop. Oil Co.,* 817 N.W.2d 693, 701 (Minn. 2012) *cert den'd,* 133 S. Ct 1249, 185 L. Ed. 2d 180 (2013); *Martin v. Artis,* 2012 MT 249, P18, 366 Mont. 513, 290 P.3d 687 (2012); *Lambert v. Holmberg,* 271 Neb. 443, 449, 712 N.W.2d 268 (2006); *Walker Drug Co. v. La Sal Oil Co.,* 972 P.2d 1238, 1243 (Utah 1998); *Grygiel v. Monches Fish & Game Club, Inc.,* 2010 WI 93, P40, 328 Wis. 2d 436, 787 N.W.2d 6 (2010).

a broader definition of trespass while still referencing the Restatement.[8] Finally, the *Radcliffe* court noted that fourteen jurisdictions had adopted broader definitions of trespass than that in the RESTATEMENT (SECOND) OF TORTS § 158.[9]

---

[8] *Pub. Serv. Co. v. Van Wyk*, 27 P.3d 377, 389 (Colo. 2001) ("The elements for the tort of trespass are a physical intrusion upon the property of another without the proper permission from the person legally entitled to possession of that real estate."); *Reed v. Reid*, 980 N.E.2d 277, 294 (Ind. 2012) ("In Indiana, '[e]very unauthorized entry on the land of another constitutes a trespass.' "); *John Larkin, Inc. v. Marceau*, 184 Vt. 207, 2008 VT 61, ¶ 8, 959 A.2d 551 (2008) ("[T]respass is an invasion of the plaintiff's interest in the exclusive possession of his land, while nuisance is an interference with his use and enjoyment of it") (citations omitted).

[9] *St Paul Church, Inc. v. Bd. of Trs. of the Alaska Missionary Conf. of the United Methodist Church, Inc.*, 145 P.3d 541, 558 (Alaska 2006) ("Trespass is defined as an unauthorized intrusion or invasion of another's land. An intentional entry onto the land of another constitutes intentional trespass even if the trespasser believes that he or she has the right to be on the land."); *Rosenblatt v. Exxon Co., U.S.A.*, 335 Md. 58, 78, 642 A.2d 180 (1994) ("We have recognized that a trespass occurs when there is interference in the exclusive possession of the land of another."); *Doe v. Jameson Inn*, 56 So. 3d 549, 555 (Miss. 2011) ("[A] trespasser is one who enters upon another's premises without license, invitation or other right"); *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 455 n.2 (Mo. 2011) ("[T]respass is the unauthorized entry upon the land of another by a person or an object as a result of a person's actions, "regardless of the amount of force used or the amount of damage done."); *McNeill v. Rice Eng'g & Operating, Inc.*, 2010 - NMSC 015, 148 N.M. 16, 19, 229 P.3d 489 (2010) ("The gist of an action of trespass to real property is in tort for the alleged injury to the right of possession.") (citations omitted); *Bloomingdales, Inc. v. New York City Tr. Auth*, 13 N.Y.3d 61, 66, 915 N.E.2d 608, 886 N.Y.S.2d 663 (2009) ("The essence of trespass to real property is injury to the right of possession."); *Singleton v. Haywood Elec. Mbrshp. Corp.*, 357 N.C. 623, 627, 588 S.E.2d 871 (2003) ("It is elementary that trespass is a wrongful invasion of the possession of another. Furthermore, a claim of trespass requires: (1) possession of the property by plaintiff when the alleged trespass was committed; (2) an unauthorized entry by defendant; and (3) damage to plaintiff.") (citations and internal quotations omitted); *Tibert v. Slominski*, 2005 ND 34, ¶ 15, 692 N.W.2d 133 (2005) ("This Court has defined trespass as an intentional harm, where a person 'intentionally and without a consensual or other privilege . . . enters land in possession of another or any part thereof or causes a thing or third person so to do.' ") (internal quotations omitted); *Apel v. Katz*, 83 Ohio St. 3d 11, 19, 1998 Ohio 420, 697 N.E.2d 600 (1998) ("A common-law tort in trespass upon real property occurs when a person, without authority or privilege, physically invades or unlawfully enters the private premises of another whereby damages directly ensue."); *Williamson v. Fowler Toyota*, 1998 OK 14, ¶ 15, 956 P.2d 858 (1998) ("Trespass involves an actual physical invasion of the real estate of another without the permission of the person lawfully entitled to possession."); *Babb v. Lee County Landfill SC, LLC*, 405 S.C. 129, 747 S.E.2d 468, 473 (2013) ("A trespass is any interference with 'one's right to the exclusive, peaceable possession of his property.' ") (citations omitted); *Barnes v. Mathis*, 353 S.W.3d 760, 764 (Tex. 2011) ("Trespass to real property is an unauthorized entity upon the land of another, and may

409

Taking these conflicting formulations into consideration, the *Radcliffe* court determined that a broader definition than the one found in the Restatement (Second) of Torts is the soundest rule for the Virgin Islands. According to the *Radcliffe* court, "regarding the soundest rule for the Virgin Islands, a broad, inclusive definition of trespass is the most appropriate rule." *Bell et al. v. Radcliffe et al.*, ST-CV-392 Mem. Op. April 30, 2014 at 15. The *Radcliffe* court explained that "[a]dopting a broad definition of trespass such as Missouri's will allow Virgin Islands courts to develop their own body of law relating to trespass while permitting reference to the Restatement when confronted with close cases, unusual facts, or new questions." *Id.*

▇▇▇ Despite the *Radcliffe* court's well-reasoned opinion, this Court will decline to adopt its formulation of "trespass" on the facts of the instant case for several reasons. First, the *Radcliffe* court did not differentiate between intentional and negligent trespass in its *Banks* analysis — the analysis which concluded with *Radcliffe* adopting the broader rule of trespass. Because the Court did not make this distinction, this Court will decline to adopt the broader definition of trespass for the narrower tort of intentional trespass alleged in this matter. Instead of this broader rule, this Court will adopt the Restatement's formulation of intentional trespass. Intentional trespass is defined in the RESTATEMENT (SECOND) OF TORTS § 158 as follows:

> One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally (a) enters land in possession of the other, or causes a thing or third person to do so, or (b) remains on the land, or (c) fails to remove from the land a thing which he is under a duty to remove.

RESTATEMENT (SECOND) OF TORTS § 158.

---

occur when one enters — or causes something to enter — another's property."); *Kurpiel v. Hicks*, 284 Va. 347, 731 S.E.2d 921, 925 (2012) ("[A] trespass is an unauthorized entry onto property which results in interference with the property owner's possessory interest therein."); *Kitsap County v. Allstate Ins. Co.*, 136 Wn.2d 567, 964 P.2d 1173, 1183 (1998) (" 'trespass,' which BLACK'S LAW DICTIONARY defines as '[a]n unlawful interference with one's . . . property, or rights . . . . Any unauthorized intrusion or invasion of private premises or land of another.' ") (citations omitted).

We also adopt this formulation over the broader one adopted by the *Radcliffe* court for practical reasons — the Restatement incorporates "intentional" as an element, while the broader rule does not. It seems obvious that a trespass could occur intentionally or negligently and that these causes of action could carry with them vastly different sets of damages. *See, e.g., Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 920 (Tex. 2013) ("While a trespass is a trespass, different recoveries are available, depending on whether the trespass was committed intentionally, negligently, accidentally, or by an abnormally dangerous activity."). Furthermore, the Court adopts the Restatement and its specific intentional trespass claim because it represents the soundest rule for the Virgin Islands.[10] This formulation of intentional trespass — apart from negligent and other forms of trespass — recognizes the fact that trespass has traditionally encompassed an entire field of torts rather than just one cause of action. RESTATEMENT (SECOND) OF TORTS § 821D cmt. d (1979) ("Trespass and private nuisance are alike in that each is a field of tort liability rather than a single type of tortious conduct.").

Having adopted the rule of intentional trespass as under the Restatement (Second) of Torts, the Court turns to whether Plaintiffs have alleged a plausible claim under this cause of action in their complaint. Under the definition of intentional trespass articulated above, a Plaintiff adequately states a plausible claim for intentional trespass when any of the three situations in that disjunctive definition are met. Plaintiffs do not allege that Defendants themselves entered their land. Instead, Plaintiffs allege that Defendants caused a "thing" to enter their land. Accordingly, the Court will examine Plaintiffs' allegations according to part (a) of the definition — that Defendants "intentionally . . . cause[d] a thing or third person to [enter land in possession of the Plaintiff]." RESTATEMENT (SECOND) OF TORTS § 158.

In their complaint, Plaintiffs allege that "Defendants intentionally caused their ethanol emissions to enter the atmosphere of the Plaintiffs."

---

[10] This approach also corresponds with the one taken by this Court's St. Thomas and St. John Division more recently in *Anduze v. Leader et al.*, ST-13-CV-119 Mem. Op. Sept. 1, 2015 at 5 (stating that "[a] defendant will be liable to a plaintiff for trespass if the defendant: (1) intentionally enters onto the plaintiff's property without the plaintiff's permission; (2) remains on plaintiff's property without plaintiff's permission despite being obligated to leave; (3) places something on the plaintiff's property without the plaintiff's permission; or (4) removes something from the plaintiff's property without the plaintiff's permission.").

Compl. ¶ 100. The question, then, is whether the ethanol that Defendants emit from their rum factories is a "thing" under the definition of intentional trespass. Defendants argue that ethanol gas is not a tangible thing and should not be actionable under intentional trespass. Plaintiffs allege in their complaint that "[e]thanol is a tangible product detectable and identifiable by existing means of air testing." *Id.* at ¶ 103.

A thing is tangible if it is "[d]iscernible by the touch or capable of being touched." WEBSTER'S, 1153. Black's Law Dictionary defines tangible as "[h]aving or possessing physical form; CORPOREAL" or "[c]apable of being touched and seen; perceptible to the touch; capable of being possessed or realized" or "[c]apable of being understood by the mind." BLACK'S, 1683. Several courts have found that only "tangible" invasions should be recognized as trespasses. *City of Bristol v. Tilcon Minerals, Inc.*, 284 Conn. 55, 87-88, 931 A.2d 237 (2007) ("[For a trespass] it is generally held that the intrusion of the property be physical and accomplished by a tangible matter."); *Bormann v. Bd. of Supervisors*, 584 N.W.2d 309, 315 (Iowa 1998) ("Trespass comprehends an actual physical invasion by tangible matter.") (quotation marks and citation omitted); *Adams v. Cleveland-Cliffs Iron Co.*, 237 Mich. App. 51, 67, 602 N.W.2d 215 (1999) ("[W]e prefer to respect the traditional requirement of a direct invasion and agree with Prosser and Keeton . . . that 'the historical requirement of an intrusion by a person or some tangible thing seems the sounder way to go about protecting the exclusive right to the use of property.' ") (citation omitted); *Johnson v. Paynesville Farmers Union Coop. Oil Co.*, 817 N.W.2d 693, 701 (Minn. 2012) ("Our case law is consistent with this traditional formulation of trespass because we have recognized that a trespass can occur when a person or tangible object enters the plaintiff's land."); *Babb v. Lee County Landfill SC, LLC*, 405 S.C. 129, 145, 747 S.E.2d 468 (2013) ("We hold that South Carolina adheres to the traditional rule requiring an invasion by a physical, tangible thing for a trespass to exist, and accordingly, hold that odors cannot give rise to a trespass claim."); *Ondovchik Family v. Agency of Transp.*, 187 Vt. 556, 2010 VT 35, ¶ 9, 996 A.2d 1179 (2010) ("[A] trespass does not always require personal entry onto land, since a 'tangible invasion of their property' is enough to make out a prima facie case for trespass.") (citation omitted).

Another line of cases stands for the "modern view" that a trespass need not be done by a tangible thing in order to be actionable. *Williams v.*

*Oeder*, 103 Ohio App. 3d 333, 338, 659 N.E.2d 379 (1995) ("[A] number of courts nationwide now recognize that the invasion of airborne particulates may interfere with a complainant's interest in exclusive possession and may therefore constitute a trespass."); *Bradley v. Am. Smelting & Ref. Co.*, 104 Wn.2d 677, 695, 709 P.2d 782 (1985) ("An intentional deposit of microscopic particulates, undetectable by the human senses, gives rise to a cause of action for trespass as well as a claim of nuisance."); *Borland v. Sanders Lead Co.*, 369 So. 2d 523, 529 (Ala. 1979) ("Under the modern theory of trespass, the law presently allows an action to be maintained in trespass for invasions that, at one time, were considered indirect and, hence, only a nuisance . . . i.e., the asphalt piled in such way as to run onto plaintiff's property, or the pollution emitting from a defendant's smoke stack, such as in the present case."); *Martin v. Reynolds Metals Co.*, 221 Ore. 86, 100, 342 P.2d 790 (1959) ("We think that a possessor's interest in land as defined by the considerations recited above may, under the appropriate circumstances, be violated by a ray of light, by an atomic particle, or by a particulate of fluoride . . .").

██ ██ In considering this motion, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012) (citations and internal quotation marks omitted). For the purposes of Defendants' 12(b)(6) motion to dismiss, the Court finds that Plaintiffs have pleaded a plausible claim for intentional trespass sufficient to survive Defendants' 12(b)(6) motion. As stated above, Plaintiffs have alleged that ethanol is a thing that Defendants have caused to enter their property. Plaintiffs allege that "Defendants intentionally caused their ethanol emissions to enter the atmosphere of the Plaintiffs." Compl. ¶ 100. Plaintiffs further allege that "Defendants intentionally failed and refused to remove the ethanol emitted from their production facilities." *Id.* at ¶ 101. They further claim that the ethanol causes black fungus to grow on Plaintiffs' property. *Id.* at ¶ 102. At this stage of this proceeding, and under the standards governing the Court's review of a Rule 12(b)(6) motion to dismiss, Plaintiffs have sufficiently pleaded that ethanol is a tangible thing that Defendants have caused to trespass onto their property. Accordingly, the Court finds that on these

alleged facts, Plaintiffs have stated a plausible cause of action of intentional trespass.

### 4. Count IV: Negligent Trespass

Count IV of the Complaint alleges that the Defendants are liable for negligent trespass. Since negligent trespass does not appear in the Virgin Islands Code, and because the Virgin Islands Supreme Court has not spoken to this cause of action, the Court will perform a *Banks* analysis to determine the soundest rule for the Virgin Islands. Specifically, the Court will perform this analysis to determine whether or not negligent trespass is a cause of action separate from intentional trespass.

The Restatement defines negligent trespass as follows:

> One who recklessly or negligently, or as a result of an abnormally dangerous activity, enters land in the possession of another or causes a thing or third person so to enter is subject to liability to the possessor if, but only if, his presence or the presence of the thing or the third person upon the land causes harm to the land, to the possessor, or to a thing or a third person in whose security the possessor has a legally protected interest.

RESTATEMENT (SECOND) OF TORTS § 165. The Court could only find one reference to "negligent trespass" in any published opinion in the Virgin Islands. *Colon v. Gremer Dev. Co.*, 28 V.I. 83 (V.I. Terr. Ct. 1993). Unfortunately, that opinion did not set out the elements of this cause of action. Courts from thirty-one States have mentioned or applied "negligent trespass" in previous cases. Some state courts clearly recognize trespass rooted in negligence. *Edgerton v. General Casualty Co.*, 172 Wis. 2d 518, 548-549, 493 N.W.2d 768 (1992) ("[T]he intrusion of [volatile organic compunds] into well water may constitute an actionable negligent trespass.") (citing RESTATEMENT (SECOND) OF TORTS § 165 (1965)); *Dial v. O'Fallon*, 81 Ill. 2d 548, 553-554, 411 N.E.2d 217, 44 Ill. Dec. 248 (1980) ("One is liable for negligent or reckless intrusion on land if he thereby causes harm to a legally protected interest." (citing RESTATEMENT (SECOND) OF TORTS sec. 165, at 300 (1965)); *DeSanctis v. Lynn Water & Sewer Comm'n*, 423 Mass. 112, 118, 666 N.E.2d 1292 (1996) ("A plaintiff may recover under the theory of negligent trespass if the jurors determine that the defendant was negligent and that the defendant's negligent entry onto the plaintiff's land caused the

plaintiff harm."); *Bosko v. Pitts & Still*, 75 Wn.2d 856, 861, 454 P.2d 229 (1969) ("The presence of the waste material on Milwaukee's right-of-way was clearly a trespass, conceded to have been caused by Bosko's negligence in failing 'to put in a retaining wall or other factor to shore up and hold said 50 truckloads of waste material.' ").

Some state courts clearly distinguish between negligent and intentional trespass causes of action. *Leroy & Co. v. City of Worcester*, 84 Mass. App. Ct. 1126, 999 N.E.2d 503, 2013 Mass. App. Unpub. LEXIS 1211, at *4-5 (2013) ("An intentional 'trespass requires an affirmative voluntary act . . . and in that respect differs from negligence' or negligent trespass.") (citing *United Elec. Light Co. v. Deliso Constr. Co.*, 315 Mass. 313, 318, 52 N.E.2d 553 (1943)); *Olsen v. Milner*, 2012 MT 88, 37, 364 Mont. 523, 276 P.3d 934 (2012) ("In addition to the tort of intentional trespass, we also recognize the tort of reckless or negligent trespass."). Other courts recognize the distinction but seem to do so merely to point out that trespass can be either intentional or negligent. *Cantrell v. Ashland Oil, Inc.*, 2010 Ky. Unpub. LEXIS 20, at *10-12 (Ky. Mar. 18, 2010) ("[T]his Court stated that whether by intentional or negligent trespass, property can be injured or harmed if there is an unreasonable interference with the property owner's possessory use of his/her property.") (internal quotation marks omitted); *Furrer v. Talent Irrigation Dist.*, 258 Ore. 494, 506, 466 P.2d 605 (1970) ("a trespass . . . may arise out of intentional, negligent, reckless, or ultrahazardous conduct."); *Smith v. Lockheed Propulsion Co.*, 247 Cal. App. 2d 774, 784, 56 Cal. Rptr. 128 (1967) ("The law in this state respecting liability for trespass is in accord with the view expressed in the Restatement of Torts: '[There] is no liability for a trespass unless the trespass is intentional, the result of recklessness or negligence, or the result of injuries in an extra-hazardous activity.' ").

Other courts have used the Restatement to distinguish between these different causes of action. *Rockwell Int'l Corp. v. Wilhite*, 143 S.W.3d 604, 620 (Ky. Ct. App. 2003) ("The Restatement distinguishes intentional trespasses and negligent trespasses by requiring 'harm' for negligent trespass."); *Ross v. Lowitz*, 222 N.J. 494, 120 A.3d 178, 2015 N.J. LEXIS 819, at *29-30 (2015) ("Our courts also apply the Restatement's standard of liability where a plaintiff pursues a trespass claim. A defendant is liable in trespass for an 'intentional[ ]' entry onto another's land, regardless of harm. Restatement § 158. A defendant is also liable if he 'recklessly or negligently, or as a result of an abnormally dangerous activity enters' onto

another's land, and the entry causes harm. *Id.* § 165."); *Brown Jug v. International Bhd. of Teamsters, Local 959*, 688 P.2d 932, 938 (Alaska 1984) (distinguishing between negligent and intentional forms of trespass, under their corresponding sections in the Restatement (Second) of Torts). Some courts distinguish between negligent and intentional trespasses based on available remedies under the different causes of action. *Coinmach Corp. v. Aspenwood Apt Corp.*, 417 S.W.3d 909, 920 (Tex. 2013) ("While a trespass is a trespass, different recoveries are available, depending on whether the trespass was committed intentionally, negligently, accidentally, or by an abnormally dangerous activity.") (citing Restatement).

Finally, other courts have either declined to recognize negligent trespass or have said that it is not a cause of action in their jurisdiction. *Montgomery v. Remsburg*, 147 Md. App. 564, 599-600, 810 A.2d 14 (2002) ("We found no reported Maryland case applying or citing this section of the Restatement. We need not decide whether to follow the Restatement standard, however, because we conclude that, even if it is in accord with Maryland law, the Montgomerys have not alleged a third party trespass within its purview."); *Karpiak v. Russo*, 450 Pa. Super. 471, 481, 676 A.2d 270 (1996) ("Appellants [argue] that the evidence established a cause of action for trespass pursuant to RESTATEMENT (SECOND) OF TORTS § 165: . . . Appellants state that the airborne dust constituted an 'entry' onto their land. However, we need not address this claim, which is whether dust is sufficient enough of a particle to constitute a trespass, since the evidence failed to establish that the dust caused appellants harm.").

Still, other courts have eschewed negligent trespass as an outdated cause of action. *Leroy & Co. v. City of Worcester*, 84 Mass. App. Ct. 1126, 2013 Mass. App. Unpub. LEXIS 1211, at *4-5, 999 N.E.2d 503 (2013) ("The trend of modern authority is that an unintended intrusion upon the land in possession of another does not constitute a trespass") (citations omitted); *Wyatt v. McDermott*, 283 Va. 685, 700, 725 S.E.2d 555 (2012) ("Under English form pleadings . . . the plaintiff was required to elect between pleading trespass vi et armis, which claimed direct tangible injury, and trespass on the case, which claimed indirect intangible injury. Virginia has since rejected this distinction as 'so nice and useless that both the courts and the legislatures have manifested a decided purpose to abolish the distinction.' ") (citations omitted).

■ ■ Taking all of this into account, the Court must determine whether negligent trespass should be recognized as a cause of action in the Virgin Islands. The Court is hesitant of abrogating any causes of action which existed at common law and which have not been specifically supplanted by statute. The Court notes that there is a presumption against abrogating common law causes of action without legislative intent to do so. *United States v. Texas*, 507 U.S. 529, 534, 113 S. Ct. 1631, 123 L. Ed. 2d 245 (1993) (noting the "presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident.") (citations omitted); *see also Pedro v. Huggins*, 53 V.I. 98, 102 (V.I. Super. Ct. 2010) ("It is a well-established and longstanding principle that '[s]tatutes which invade the common law . . . are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident.' ") (quoting *United States v. Texas*). In light of this presumption, and due to concerns about foreclosing access to justice for claimants in the Virgin Islands, the Court finds that the best rule for the Virgin Islands is to recognize negligent trespass as its own tort, separate from intentional trespass. Recognizing negligent trespass as a tort apart from intentional trespass represents the soundest rule for the Virgin Islands because it recognizes the reality that a trespass can occur negligently or intentionally. Part and parcel with this distinction is the varying degrees of fault as well as different amounts of damages, depending on which tort is alleged and proven in court.

■ Furthermore, the Court adopts the formulation of this tort found in the Restatement (Second) of Torts as the soundest rule for the Virgin Islands. Section 165 of the Restatement explains this cause of action as follows:

> One who recklessly or negligently, or as a result of an abnormally dangerous activity, enters land in the possession of another or causes a thing or third person so to enter is subject to liability to the possessor if, but only if, his presence or the presence of the thing or the third person upon the land causes harm to the land, to the possessor, or to a thing or a third person in whose security the possessor has a legally protected interest.

RESTATEMENT (SECOND) OF TORTS Sec. 165 (1965).

 ██ Under this formulation of negligent trespass, Plaintiffs must allege that Defendants (1) recklessly, negligently, or as a result of an abnormally dangerous activity; (2) entered or caused a thing or third person to enter land of another; and (3) harm caused by his presence or the presence of the thing or the third person upon the land. Plaintiffs allege in their Complaint that "[a]s a direct and proximate result of the Defendants' reckless or negligent conduct as alleged herein, rum fungus and ethanol from Defendants' St. Croix alcoholic beverage production operations entered upon, accumulated upon, and physically invaded Plaintiffs' real and personal property . . . causing harm . . ." Compl. ¶ 130. Plaintiffs likewise reallege several of the allegations from their negligence claim in their negligent trespass section. *Id.* at ¶¶ 117-130. As previously explained, Plaintiffs have alleged that a "thing" under the definition of trespass has invaded their land. Therefore, Plaintiffs have alleged facts and allegations plausible enough to sufficiently state a claim and to survive Defendants' motion to dismiss under Federal Rule of Procedure 12(b)(6).

### 5. Count V: Right to Injunctive Relief

 Count V alleges, as a separate cause of action, a right to injunctive relief. This claim is a remedy and not a cause of action. Both Plaintiffs and Defendants acknowledge this fact. *Birdman v. Office of the Governor*, 677 F.3d 167, 172, 56 V.I. 973 (3d Cir. 2012) ("[A]n injunction is a remedy, not a cause of action."). However, Plaintiffs point to case law where this equitable remedy has been alleged as a claim in a complaint in this Court. *Beachside Assocs. v. Bayside Resort, Inc.*, 2011 V.I. LEXIS 68, at *20 (V.I. Super. Ct. Nov. 25, 2011) ("In Counterclaim V, SBRMCOA seeks a preliminary or permanent injunction requiring Beachside to continue to provide recreational amenities to the members."). Regardless, this case law does not provide any reason for preserving Plaintiffs' claim in this proceeding. Plaintiffs explain that they pleaded injunctive relief as a separate count because in order to get this extraordinary relief claimants must plead additional elements. Opp'n. to Mot. to Dismiss at 25. Because injunctive relief is not a cause of action the Court will dismiss Count V of the Complaint.

### IV. CONCLUSION

For the reasons stated above, the Court finds that Plaintiffs' claims are not preempted by the CAA. The Court also finds that Plaintiffs have

pleaded plausible causes of action for negligence, private nuisance, intentional and negligent trespass. Defendants are entitled to dismissal of Count V for injunctive relief because it is not a cause of action. Accordingly, the Court will deny Defendants' motion as to Counts I through IV, and will grant their motion as to Count V. An appropriate Order follows.